Scurfield, Appellant, *v.* Federal Laboratories, Inc.

Argued March 29, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

146

*Joseph R. Doherty,* with him *C. Tracy Taylor, Kenneth Souser, William C. Ferguson, Jr.,* and *Artemas C. Leslie,* of *McCloskey, Best & Leslie,* for appellant.

*Clyde A. Armstrong,* with him *Roy G. Bostwick,* of *Thorp, Bostwick, Reed & Armstrong,* and *Charles C. Hewitt,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, May 16, 1939:

Plaintiff appeals from a judgment entered against him in pursuance of defendant's affidavit of defense raising questions of law. The action is in trespass for personal injuries and the circumstances out of which it grows somewhat unique. The injury to plaintiff was inflicted more than nine years ago, on December 19, 1929. Suit was not brought until a few days before the statute of limitations had run.

The statement of claim alleged that defendant is the manufacturer of a so-called tear gas gun, so made as to resemble a fountain pen. It sold one of them to Daniel Vollmer, a florist. The sale was made by an agent of defendant. Vollmer purchased it for the purpose of defending himself and his property against persons who might attempt to rob him, upon the representation made by the agent that the tear gas would not permanently injure or harm the human body, but, on the contrary, would produce burning sensations or irritations of a harmless character, enduring not more than twenty-four hours. On the side of the instrument there was an attachment resembling a clasp, which was in reality a trigger, controlling the discharge of a cartridge, thereby inducing the emission of the tear gas. Plaintiff, while lawfully in the shop of Vollmer, upon a business mission, believing the contrivance which was exposed

in the store was a fountain pen, was examining or inspecting it and was injured thereby. The negligence charged against defendant was: (a) In manufacturing and selling a preparation intended to be discharged upon the human body, which it knew or should have known would permanently and grievously injure the tissues of the body, particularly the face, eyes and lungs; (b) in representing as harmless an article through the intended use of which it knew or should have known permanent injury might result to innocent persons; (c) in manufacturing and selling in the guise of a harmless fountain pen, intending it to be mistaken as such, an article dangerous and harmful; (d) in placing at the disposal of innocent third persons an article which looked harmless but which it knew would inflict great injury; (e) in failing to equip it with proper safety appliances; (f) in manufacturing and selling a preparation capable of inflicting great harm concealed in a contrivance resembling a fountain pen, calculated from appearance to invite inspection under a belief that it was harmless; (g) in manufacturing and selling a contrivance which it knew would be placed within the reach of innocent persons whose inspection thereof would be invited by its appearance and who might be seriously injured thereby; (h) in rendering it possible for an innocent person such as plaintiff to suffer serious injuries in a manner that might reasonably have been anticipated; (i) in failing to label a dangerous instrumentality as such or to give notice of its dangerous character when it knew that the instrumentality was likely to be exposed to examination and inspection by the public; (j) in failing to notify the purchaser of its dangerous characteristics; (k) in failing to warn or notify the purchaser that the gas gun might be discharged inadvertently if allowed to remain where innocent persons would have access thereto, when it knew or should have known that the gun was likely to be exposed to inspection by innocent persons.

It will be seen that in this statement of his claim plaintiff does not set forth any of the facts as to why or under what circumstances he was examining or inspecting the gas gun. It simply avers that he was examining or inspecting it when he was in Vollmer's store.

The court below determined that the statement of claim was insufficient and did not state a cause of action, that the case was ruled in defendant's favor by *Scalise v. F. M. Venzie & Co., Inc.,* 301 Pa. 315, 152 A. 90, on the ground that between plaintiff and defendant there was an intervening independent human agency responsible for the injury, and entered judgment for defendant. Subsequently, the court revoked its order and permitted plaintiff to amend his statement.

The amended statement of claim contained the following additional averments: That Vollmer purchased the article for the purpose of protecting himself against any person who might attempt to molest him or his property by discharging a quantity of the so-called tear gas into the eyes of such person and thereby producing sufficient discomfort to render such person powerless to attack; that defendant intended, and by its agent recommended, that the device be allowed to lie open and exposed in the shop of the purchaser and defendant deliberately and designedly clothed said device in a guise which made its exposure to the public view possible without impairing its value as a weapon of defense, and in fact for the very purpose of giving it practical utility as such a weapon since, in such guise, it could be kept ready to hand and its use for the purpose for which it was intended and could be resorted to without giving the intended victim notice of such intended use; that, relying upon the representations and recommendations of defendant's agent, Vollmer caused the device to be exposed in his shop in the manner intended in a position in which it was readily accessible for use for the purpose intended and where it could be seen by anyone coming into the shop.

There is still no averment of the circumstances under which plaintiff handled the gun, whether the gun was given to him by Vollmer or whether he picked it up himself, and if the latter, where the gun was before he secured possession of it. Plaintiff's counsel evidently recognizes this as one of the weaknesses in their case, because in their brief they say: "As Vollmer had been advised that the weapon was not dangerous to life or limb he placed it where it was intended to be placed, and where alone it would best serve its purpose—on his counter beside his cash register." There is no allegation in the statement as to where the gun was placed by Vollmer. Not a word about its being placed "on his counter beside his cash register." The brief goes on to state: "While the latter [Vollmer] was busy with another customer plaintiff was attracted to the unusual looking fountain pen lying on the counter." There is nothing of this kind set forth in the statement.

These unwarranted statements give emphasis to the proposition that there is no averment in the pleading of the circumstances of the accident. However, in view of the broader outlines of the case, we will treat this as immaterial. For the purpose of this appeal it can be assumed, as is stated in appellant's brief, that "while the latter [Vollmer] was busy with another customer plaintiff was attracted to the unusual looking fountain pen lying on the counter" and that "he picked the pen up for inspection."

An examination of the reported decisions fails to reveal any adjudication involving a similar factual situation. We are not here dealing with circumstances where a manufacturer has sold something to a dealer for resale as in the food and medicine cases, such as *Catani v. Swift & Co.*, 251 Pa. 52, 95 A. 931; *Tavani v. Swift & Co.*, 262 Pa. 184, 105 A. 55; *Rozumailski v. Phila. Coca-Cola Bottling Co.*, 296 Pa. 114, 145 A. 700. Nor are we dealing with cases in which a manufacturer has sold a chattel with a defect in it, such as *Griffith v. At-*

*lantic Refining Co.,* 305 Pa. 386, 157 A. 791; *MacPherson v. Buick Motor Co.,* 217 N. Y. 382, 111 N. E. 1050; Restatement, Torts, Secs. 394, 395, 398. The determination of the questions here presented must rest upon general principles. It is conceded that defendant may only be fixed in damages if the allegations of the statement of claim reveal some act of negligence on its part. The test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm resulting from his act or omission: *Paulscak v. Hoebler,* 330 Pa. 184, 198 A. 646; Restatement, Torts, Sec. 284. "Before an act can be held negligent it must reasonably be foreseen that the doing of it is attended with such probabilities of injury to another that a duty arises either to refrain from the act altogether, or to do it in such manner that harm does not result. It is well settled that conduct is negligent only if the harmful consequences thereof could reasonably have been foreseen and prevented. . . . In *Venzel v. Valley Camp Coal Co.,* 304 Pa. 583, we said (p. 590) : 'Liability for negligence depends on antecedent probability, not the mere possibility, of harmful results therefrom. The general test of liability is whether the injury could be foreseen by an ordinary intelligent person as the natural and probable outcome of the act complained of.' " *Jacob v. Phila.,* 333 Pa. 584, 5 A. (2d) 176.

Applying these principles to the facts in hand, the conclusion is inescapable that no act of negligence is alleged. Giving full effect to all the averments of the statement, it cannot be said that defendant's representative who negotiated the sale could have foreseen that the sale of the gun under the circumstances alleged involved any probability of injury to Vollmer's customers. When the gun was sold to Vollmer, he was fully informed of its nature and purpose. Defendant's representatives would be justified in relying upon the supposition that Vollmer would keep this disguised weapon for his own purpose and out of the hands of other per-

sons. They cannot be charged with knowledge that he would permit the gun to remain in such a position in the store as to constitute an attraction to others. If Vollmer saw fit to allow the weapon to remain in his store accessible to prying customers and harm resulted, the fault lies with him and not defendant.

It is true the statement contains an allegation that defendant's agent recommended the device be allowed to lie open and exposed in the shop of the purchaser. This averment, however, is not further amplified. It cannot be inferred that the defendant's agent recommended that the gun be placed in a position where it would be available to customers.

Much stress is laid upon the allegation that defendant's representative stated to Vollmer at the time the sale was made that the tear gas would not injure permanently but was a "harmless irritant, which would produce burning sensations or irritations of a harmless character enduring not more than twenty-four hours." No liability can be predicated on this statement. Obviously it had reference to the effect of the tear gas if discharged from the gun in the normal way. The agent could not have intended these representations to be applicable if the gas was discharged by an individual directly into his own face.

Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE DREW:

It seems to me the statement of claim clearly alleges actionable negligence. It is there averred that defendant manufactured a dangerous weapon in the guise of an ordinary fountain pen, with no safety device and with nothing to give warning of its dangerous quality; that defendant sold the pen to Vollmer with an express representation that it was harmless and would cause no permanent injury, when in fact defendant knew or should have known that permanent injury to innocent persons might result; that relying on this representa-

tion, the pen was placed by Vollmer within easy reach, where it might properly have been placed had it been as represented; and that plaintiff, a business invitee, was attracted by its appearance and inspected it with the consequent discharge of the cartridge into his face and eyes, and resulting permanent injury.

There is nothing in the statement of claim to support the conclusion of the majority that "when the gun was sold to Vollmer, he was fully informed of its nature and purpose." On the contrary, it is specifically alleged that defendant represented to Vollmer that the article was harmless when it knew or should have known permanent injury would probably result from its actual use by persons not acquainted with its dangers. It seems quite clear that defendant's negligence was the substantial factor in causing the harm. The defendant cannot escape liability because of intervening human actions which were easily foreseeable as the normal responses to defendant's negligent act: *Shaffer v. Mowery,* 265 Pa. 300; *Quigley v. Del. & H. Canal Co.,* 142 Pa. 388; *Dannenhower v. Western Union Telegraph Co.,* 218 Pa. 216; *Whinney v. Reading Co.,* 95 Pa. Superior Ct. 135.

It is difficult to conceive of an article more potentially dangerous than a weapon, capable of inflicting serious injury, which is deliberately disguised in the form of an innocuous everyday article. It is certainly foreseeable that if the manufacturer does not warn the purchaser of the damage it is capable of doing, the purchaser will not take necessary precautions to prevent others from handling it. Obviously, the principal value of a tear gas gun disguised as a fountain pen lies in the fact that it may be placed where one would ordinarily place a fountain pen, within easy reach, so that its use may be resorted to without attracting suspicion. Under the circumstances it was not at all unusual that plaintiff, a normally inquisitive person, should pick up the pen to examine it and be seriously injured.

The factual situations in the two cases cited by the majority to sustain their position are not at all analogous. In *Jacob v. Phila.,* 333 Pa. 584, we affirmed the refusal of the court below to take off a nonsuit, where the negligence alleged was that the cellar doors in front of the defendant's premises were permitted to remain open and were not properly held together. The doors were well beyond the plaintiff's line of travel, but he seized hold of them to save himself as he slipped on the ice. We quite properly held that the defendant was not bound to anticipate the sequence of events leading up to that injury. In *Paulscak v. Hoebler,* 330 Pa. 184, the defendant placed heavy electric sign boards and machinery on top of an old building and the vibrations from the operation shook the building and weakened the wall, causing it to collapse and injure the plaintiff, a tenant therein. In affirming a verdict for the plaintiff in the Paulscak case, supra, this court said (p. 192) : "The question whether a person charged with negligence or negligent acts or omissions should have foreseen the injuries resulting from these acts or omissions is for the jury, if there is any credible evidence from which a reasonable conclusion can be drawn in support of the claim of neglect of duty." Yet, the majority cite this case to support a decision, which deprives plaintiff of the opportunity to produce credible evidence in support of his allegations of defendant's negligence, and of having the jury pass upon the question of foreseeability.

Here the actions of Vollmer and plaintiff were reasonably to have been anticipated, and in the retrospect their intervening acts do not appear to be unusual or extraordinary. There is not the slightest doubt in my mind that the negligence of defendant was the proximate cause of the accident. It comes well within the definition of proximate cause laid down by Mr. Justice MESTREZAT in *Wallace v. Keystone Automobile Co.,* 239 Pa. 110, 117: "The proximate cause of an accident im-

posing liability is the dominant and efficient cause which acts directly or necessarily sets in motion other causes, not created by an independent agency, and which naturally and reasonably results in injury which as a consequence of the primary act, under the circumstances, might and ought to have been anticipated in the nature of things by a man of ordinary intelligence and prudence, although, in advance, it might have seemed improbable and the precise form in which the injury actually resulted could not have been foreseen. The succession of connected events springing out of the primary causal act, and not time or distance intervening between it and its injurious consequences, is, except as bearing upon the question of improbability, the test in the application of the rule." Defendant's negligence was not excused by the intervening acts because they should have been foreseen: *Welser v. United Gas Improvement Co.*, 304 Pa. 227; *Darrah v. Wilkinsburg Hotel Co.*, 318 Pa. 511; *Kline v. Moyer and Albert*, 325 Pa. 357; *Lane v. Atlantic Works*, 111 Mass. 136. The principle has been consistently applied in situations such as the instant case, where suppliers of dangerous chattels are alleged to be negligent: *Elkins v. McKean*, 79 Pa. 493; *Shaffer v. Mowery*, supra; *Waters-Pierce Oil Co. v. Deselms*, 212 U. S. 159; *Rosebrock v. General Electric Co.*, 236 N. Y. 227; *Anglo-Celtic Shipping Co. v. Elliott & Jeffery*, 42 T. L. R. 297; *Farrant v. Barnes*, 11 C. B. (N. S.) 553.

I think the particularity of pleading here demanded is not required under our modern practice. In my judgment, averments as to the exact circumstances under which plaintiff handled the pen, and the different effect, if any, which the tear gas would produce when discharged at a very close range as distinguished from what the majority term a discharge "in the normal way" are properly evidential facts for the jury and are not required to be set forth with meticulous detail in the statement of claim. By section 5 of our Practice Act

of May 14, 1915, P. L. 483, it is provided: "Every pleading shall contain, and contain only, a statement in a *concise and summary form* of the material facts on which the party pleading relies for his claim, . . . *but not the evidence by which they are to be proved,* or inferences, or conclusions of law . . .." (Italics added.) The Act requires that only the ultimate material operative facts constituting the plaintiff's cause of action be alleged. Evidential facts should not be pleaded: *Davis v. Investment Land Co.,* 296 Pa. 449; Clark, Code Pleading, 150. In *Electric Reduction Co. v. Colonial Steel Co.,* 276 Pa. 181, 186, Mr. Justice SCHAFFER, in speaking for this court, said: "The Practice Act of May 14, 1915, P. L. 483, does not require the details of matters intended to be proved, or the evidence relied on, to be set forth in the pleadings."

The judgment of the court below should be reversed.

Mr. Justice STERN joins in this dissent.