Zilka *v.* Sanctis Construction, Inc., Appellant.

Argued March 21, 1962. Before Bell, C. J., Musmanno, Jones, Cohen and Eagen, JJ.

reargument refused January 21, 1963.

*James J. Burns, Jr.,* with him *Robert C. Little,* and *Burns & Manley,* for appellant.

*Edward O. Spotts,* with him *James P. Gill,* and *Charles S. Morrow,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, November 13, 1962:

This is an appeal from a judgment of the Court of Common Pleas of Allegheny County entered upon a $30,000 verdict in a trespass action in favor of Emil J. Zilka (Zilka) and against Sanctis Construction, Inc. (Sanctis).

In the summer of 1956 Zilka resided along a county highway, known as Bailey's Run Road, which runs between Creighton and Russelton, Allegheny County. At that time Allegheny County was engaged in a reconstruction of that highway, the work of reconstruction being performed by Sanctis under the direction of the County. None of Zilka's property was taken for the highway purposes but Sanctis had secured from Zilka, in the form of a general written release, permission to enter upon Zilka's property for the purpose of grading, filling and levelling the surface of the highway.

In early September 1956 the highway construction reached the point at which Zilka's property fronted upon the highway. On September 6th, Sanctis, with Zilka's acquiescence, pushed over two trees on Zilka's land with a bulldozer and rolled the trees into a ravine or gully which lay between the highway and Zilka's home. Toward the end of that day two men representing Sanctis informed Zilka that, before any more fill could be placed in front of his property, the branches on the two fallen trees would have to be trimmed and, inasmuch as Sanctis had no available man to perform this work, Zilka would have to trim the branches. On September 7th, Zilka, using a brush axe,[1] trimmed the branches

---

[1] Sanctis' defense implied that Zilka was not injured by a blow on the head from a tree, or part of a tree, but from his use of the brush axe. On this appeal such implication cannot be considered.

from these trees, completing such work prior to the time Sanctis commenced its operations.

Planning a trip to Creighton with his wife to collect his pay check and do some shopping, Zilka then entered his home, changed his clothes, and, while waiting for his wife to get ready, took a position on his property where he could watch the work being performed by Sanctis. In particular, Zilka watched Sanctis' bulldozer—*30 to 35 feet distant from where Zilka stood*—being operated by Sanctis' employee Turner known to Zilka as "Sonny". Zilka testified that he had waved at Turner and Turner had waved back at him. Under the testimony of Zilka—*the only eyewitness*—the bulldozer, operating in the gully or ravine, was making "passes" and spinning around and, in the course of so doing, hit a group of trees lying in the gully or ravine and a tree or part thereof flew up and hit him. Zilka sustained, as the result of this blow, numerous lacerations and injuries, including the loss of vision in his left eye.

On this appeal Sanctis seeks either (a) a judgment n.o.v. on the grounds that Zilka failed to establish negligence and that Zilka was contributorily negligent as a matter of law or (b) a new trial on the grounds that the trial court erred in certain portions of its charge to the jury and in the admission into evidence of certain mortality tables.

In passing upon the motion for judgment n.o.v. certain well settled principles of law must guide us: (1) the mere happening of an accident is not evidence of negligence (*Bohner v. Eastern Express, Inc.,* 405 Pa. 463, 175 A. 2d 864; *DiGiannantonio v. Pittsburgh Railways Co.,* 402 Pa. 27, 166 A. 2d 28) ; (2) the burden is upon the plaintiff to produce evidence from which a reasonable inference arises that the defendant was negligent and that such negligence was the proximate cause of the accident (*Ucci v. Keane,* 402 Pa. 467, 167

A. 2d 147; *Pascarella v. Kelley*, 378 Pa. 18, 105 A. 2d 70); (3) the evidence, and all reasonable inferences therefrom, must be viewed in the light most favorable to the verdict winner (*Ucci v. Keane*, supra); (4) while foreseeability is not an element to be considered in determining whether negligent conduct was the proximate cause of an accident, it is an element to be considered in determining the existence of negligent conduct (*Helm v. South Penn Oil Co.*, 382 Pa. 437, 114 A. 2d 909; *Churbuck v. Union Railroad Co.*, 380 Pa. 181, 185, 110 A. 2d 210; *Dahlstrom v. Shrum*, 368 Pa. 423, 84 A. 2d 289; *Rockey v. Ernest*, 367 Pa. 538, 80 A. 2d 783; *Hankins v. Mack*, 364 Pa. 417, 72 A. 268; *Shipley v. Pittsburgh*, 321 Pa. 494, 184 A. 2d 671; Restatement, Torts, §281 comment c and revised §435 (1948 Supplement).

Zilka related the manner in which the accident occurred: "Q. Okay, at the time that he was running his bulldozer back and forth, up and down this road, moving the dirt around, were there any trees in this— A. (Interposing) Yes, sir. Q. (Continuing)—in this gully? A. Yes, there were a considerable number of trees that had been cut from about a month previously; some of them had been cut earlier, some of them were knocked down even a day or so prior to this and there was a lot of trees strewn all through that gully. Some of them were cut and some of them were knocked out with roots and all, they were laying down in through that gully all the way. Q. Okay. How close were these trees that were laying on the ground or in this ravine, how close were those trees in reference to where Sonny was running this bulldozer? A. Well, you mean where he was making his passes up and down? Q. Yes. A. Well, I say that some of the trunks of the trees probably were within a couple of foot of the fill that he was putting in. Q. All right, and how far were you standing, by the way, from where the bulldozer was operating if

you know, in a direct line distance, if you know? A. Oh, I would say about thirty or thirty-five feet. Q. All right. Now, did an accident happen to you that morning? A. Yes. Q. What happened to you? A. *Well, as I was standing there on that side of the gully where my house is, about six foot down, the bulldozer was working across from me on the other side, as he was making these passes around, whipping the bulldozer around, as they do, you know, they can spin those things around on a dime, he spun it around and hit these trees and as the trees rolled over, one tree came up at me. I never, didn't have a chance to duck out of the way or anything, I just got hit. Q. Do you know what hit the tree, Mr. Zilka? A. The bulldozer hit the tree, the blade of the bulldozer hit the trees. Q. And the tree then struck you? A. That is right.* Q. And do you know anything more after that? A. That is all I remember until—I think it was Sunday when I woke up in the hospital, . . . ." (Emphasis supplied) . . . Q. And the truth of the matter, Mr. Zilka, as you said that first time you were asked, is that you really don't know what tree it was that hit you or where it came from? A. Not the specific tree, no, but it was out of this bunch that he hit with the blade, come up at me, it was one that hit me. I can't point out the tree and say, 'This is the one, this big around.' *And, of course, I would say, well, one of the trees it was a tree that hit me that come up out of that pile as he hit it, as he spun over the trees rolled and these trees come at me before I had a chance to even figure I was getting hit or what.* That's it, I didn't remember anything any more, I don't recall anything, as I said until Sunday after that." (Emphasis supplied).

The crux of our inquiry is whether, under Zilka's testimony and the surrounding circumstances, negligence on the part of the operator of the bulldozer has been established. Viewed most favorably in Zilka's

favor, the record indicates that the bulldozer was in the gully or ravine where it had the right to be, that it was engaged in an operation not inherently dangerous or hazardous, that it was making "passes", "whipping . . . around" and "spinning", all of which are normal, usual, and standard practice in bulldozer operations and that the bulldozer blade hit a tree, a fact neither unusual or extraordinary. The record further indicates that, when the bulldozer hit *a* tree, *some* tree or *some* part thereof—undescribed as to size, location on the ground or distance from Zilka—struck Zilka then standing 30 to 35 feet from the point at which the bulldozer was in operation.

In *Rockey v. Ernest*, 367 Pa. 538, 541, 80 A. 2d 783, we stated: "While negligence need not be proved by direct evidence but may be inferred from circumstantial evidence, i.e., facts and circumstances from which defendant's negligence may be legitimately inferred, nevertheless it is still necessary even in this class of case that the injured person prove that the defendant was negligent and that his negligence was the proximate cause of the accident [citing cases]." In our view, the instant record fails to prove that the bulldozer was operated in an improper, unusual or negligent manner or that there was a likelihood of any harm resulting from the operation of such bulldozer to a person standing, as was Zilka, a considerable distance from the point at which the bulldozer was in operation. We cannot infer from the fact that a tree or a part thereof struck Zilka that the operation of the bulldozer was negligently performed particularly when, under Zilka's own testimony, there is not a scintilla of evidence of negligence in the operation of the bulldozer. It was incumbent on Zilka to prove that the blow struck him by a tree, or a part thereof, arose from an improper or careless operation of the bulldozer and that he was within the "orbit of danger" arising from

the operation of the bulldozer; on both counts, Zilka failed to sustain his burden of proof.

The instant factual situation is not without precedent. In *White v. Roydhouse,* 211 Pa. 13, 60 A. 316, a workman of the defendant was engaged in mixing mortar when he came across a lump of unslacked lime which it was necessary to crush; he raised a hoe which he was using and struck the lump with sufficient force to crush it and, in so doing, a particle of the lime flew 15 feet and struck the plaintiff. In entering judgment in favor of the defendant, this Court said (p. 16): "Where was the negligence? The result was not a probable consequence of [the employee's] act in mixing the mortar with the hoe; the most that could be said of it is, that the consequence was very remotely possible, so remotely, that it is one which in the ordinary affairs of life the most careful men do not anticipate and make provision against." In *Rockey v. Ernest,* supra, decedent was laying a pipe 20 to 25 feet distant from a point where a bulldozer was in operation when the bulldozer struck a stone which snapped from under the bulldozer, flew a distance of 20 to 25 feet and struck decedent in the head. This Court stated (pp. 541, 542) : "There was no evidence that defendant operated the bulldozer negligently or in an unusual or improper manner; and it is clear that the accident was a remote possibility and not the natural and probable consequence of a bulldozer running over a stone. There was therefore no evidence of facts or circumstances from which negligence on the part of the defendant could be legitimately inferred."

The Supreme Court of North Carolina was presented with a situation somewhat akin to the present situation in *Griffin v. Blankenship,* 248 N. C. 81, 102 S.E. 451. Griffin owned a tract of land which, in cooperation with an adjoining landowner, he decided to lay out in building lots and to that end he hired Blanken-

ship to grade the land, to remove trees and brush and to pile the latter in a street area where they could be burned. One Wilson, the bulldozer operator, was pushing a considerable amount of cut trees, stumps and brush when a tree which was being pushed struck a stump which caused the tree to swing around and fly a distance of 15 feet where it struck Griffin who had been standing in the wooded area. The Court stated, inter alia (p. 85) : "The operator of the bulldozer . . . owed to [Griffin] the duty to exercise due care in the operation and manipulation of the bulldozer. . . . There is no evidence on this record which tends to show that the defendant Wilson operated the bulldozer negligently or in an unusual or improper manner, or that in its operation there were any facts or circumstances from which negligence on his part may be legitimately inferred. [Citing cases including *Rockey v. Ernest,* supra.] In our opinion, the evidence does not show facts sufficient to warrant the inference that the operator of the bulldozer could reasonably have foreseen that the sapling, which was being pushed along with a pile of other saplings, brush and rubbish, would fly out and injure [Griffin], who was standing in the woods and off of the right of way."

In *Dahlstrom v. Shrum,* 368 Pa. 423, 84 A. 2d 289, we said (p. 425) : "The test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act: Scurfield v. Federal Laboratories, Inc., 335 Pa. 145, 6 A. 2d 559. In Palsgraf v. Long Island R. Co., supra, it was stated by CARDOZO, C. J. (later Justice, United States Supreme Court) : '. . . the orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty.' Also: 'The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension.' "

In our view, in the operation of this bulldozer negligence was not shown and, furthermore, it could not have been foreseen that there was any likelihood of harm to Zilka, i.e., he was not within the "orbit of danger", from the operation of this bulldozer.[2]

Concluding as we do that Zilka has failed to establish any negligent conduct on the part of Sanctis, it is unnecessary for us to consider the questions of contributory negligence, the import of the release given to Sanctis by Zilka or the reasons assigned for a new trial.

Judgment reversed and judgment n.o.v. entered.

Mr. Justice O'BRIEN took no part in the consideration or decision of this case.

———

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On September 7, 1956, at about 9:30 in the morning, Emil J. Zilka was standing in the yard of his home in East Deer Township, Allegheny County, when a tree came flying through the air, hit him on the head, struck his left eye and drained it of the miracle of sight. From then on, so far as the world of optical enchantment is concerned, he has been only half a man.

The tragedy of the one-eyed person is not only that one-half of the beauties and visual joys of the world are sealed off from him permanently by an impenetrable wall arising from the ground to the farthest reaches of the heavens, but that he no longer has an eye in reserve. Thus, should there be another accident, the omi-

———

[2] "Unless my act is of a nature to threaten others, unless under the circumstances a prudent man would have foreseen the possibility of harm, it is no more justifiable to make me indemnify my neighbor against the consequences, than to make me do the same thing if I had fallen upon him in a fit, or to compel me to insure him against lightning.": Mr. Justice HOLMES, The Common Law, p. 96.

nous wall at his side could collapse and bury him in the debris of a doomed darkness forever.

Of course, the immensity of a physical disaster in itself has no bearing on the liability for the fortuitous circumstance which brought it about, but it is mentioned here for the purpose of indicating that this is no trivial case. A grave loss has been sustained by Emil J. Zilka and, if the law deprives him of what he is entitled to, a grave injustice has been perpetrated. I believe that we are dealing here with a grave injustice.

How did Mr. Zilka lose his eye? On the day already mentioned, one Thomas W. Turner, who was employed by the Sanctis Construction Co., the defendant in this case, was operating a bulldozer on a road construction job in the vicinity of the plaintiff's house. For several days he had been using his bulldozer to knock down trees and push them into a gulley which separated the plaintiff's home from the arena of the bulldozer's operations. On the day of the accident he was maneuvering these trees and others, some still alive, into position to make fill for the ravine which would eventually become an integral part of the contemplated highway development on which he was working. Whether Turner was a skilled bulldozer operator or not is a question of fact in this litigation. In striking down some oaks he collided with one in such a fashion that he damaged a power line. The impact of the bulldozer blade with that particular tree hurled it into the wires, and the branches became so entangled in them that a member of the work crew had to climb up to the point of entanglement and saw off a limb to free the tree. Turner's explanation of this mishap was that he *did not see* the wires.

On the day of the event which became the subject of this lawsuit, Turner was whipping the bulldozer around and he spun it with such momentum and force

that its mammoth blade came into collision with another tree (one already severed or still alive); striking it with such violence that the tree was catapulted into space, cleared the gulley and landed on Emil Zilka, inflicting the horrible injury already described.

Zilka brought suit against Turner's employer, the Sanctis Construction Company, charging it with negligence, and the jury returned a verdict of $30,000 for the plaintiff. The defendant appealed and the Majority of this Court has reversed the verdict, entering judgment for the defendant n.o.v.

For what reason? The Majority Opinion says that the plaintiff failed to show that the defendant was guilty of negligence. It says that "the mere happening of an accident is not evidence of negligence." But this was not a mere happening. The evidence showed that Turner was aware that the plaintiff was within the area of the catapulting potentialities of his machine— a D-8 Caterpillar, 26-ton bulldozer—and he knew that unless he exercised the care required by the circumstances, a serious accident could occur. He knew that only a day or two before, he had brought down a power line because he was careless. He was thus put on notice not to be careless again. The trial judge properly submitted to the jury the question as to whether the operator was negligent in causing the accident which befell Zilka. The jury decided that Turner was indeed careless, perhaps even reckless, and returned a verdict of $30,000 against the defendant company, a modest sum for the loss of one-half of the paradise of living.

The Majority, in ordering judgment for the defendant notwithstanding the verdict, says that the defendant's bulldozer "was in the gully or ravine where it had the right to be" and "that it was engaged in an operation *not inherently dangerous or hazardous.*"*

---

* Italics throughout, mine.

To say that a bulldozer in operation is not inherently dangerous is to deny what one's senses proclaim. It is to say that a locomotive, or a concrete mixer, or an automatic meat slicer is not inherently dangerous. The most desultory glance at a bulldozer in furious function reveals it to be an awesome gigantic piece of machinery with tractor treads massive as the wheels of a juggernaut; one can also see that it possesses the blade of a guillotine, the power of a steam engine, and the thrust of a battering ram. A bulldozer is capable of demolishing dwellings, reducing industrial structures to twisted steel and kindling, moving hills, and cutting into the surface of the earth with the destructive incisiveness of an earthquake.

But the Majority treats this mechanical Frankenstein of the machine age as if it were as innocuous as a lawn mower. This casual and indifferent treatment by the Majority, however, does not lessen the responsibility of the defendant in this case. Anyone who owns a bulldozer and allows an incompetent or reckless person to operate it should be liable to the last handle of its mighty levers, for the damage his incompetence and carelessness inflict.

The Majority Opinion finds that there was nothing extraordinary about the bulldozer's operations on the day of the accident. It says that it was making "'passes', 'whipping . . . around' and 'spinning,' all of which are normal, usual, and standard practice in bulldozer operations."

Characterizing the bulldozer's actions as normal, usual and standard practice does not minimize the fearful perils which accompany such actions. One could say that a locomotive traveling at 100 miles per hour is engaged in a normal, usual and standard practice, but if the engineer negligently runs down a vehicle or person in his path the fact that he was engaged in a normal operation will not excuse him from responsi-

bility for the accident. Turner knew that only 35 feet separated him from a helpless human being. He knew the momentous force produced by the machine responding to his will. He had the responsibility to so conduct himself that he would not catapult any object across a ravine and onto the domain of a private householder.

The Majority not only finds that the bulldozer was engaged in a normal, standard practice, but it says that the fact "that the bulldozer blade hit a tree" is a "fact neither unusual or extraordinary." Is there nothing unusual about a bulldozer hitting a tree in such a manner as to lift it into midair? Is there nothing unusual about a bulldozer converting that tree into a missile, rocketing it through the air 35 feet? Is there nothing extraordinary about a bulldozer operator completely overlooking the nature of his surroundings and carrying on as if he were at Cape Canaveral, instead of in a residential area? Is it not extraordinary that a tree should be soaring disconnectedly in space? Trees invariably take root downward and then grow upward; they do not ever take wing, they do not of their own volition fly through the air, they do not become rockets, they do not turn into huge arrows to pluck out the eyes of people in their own front yards.

The Majority has completely missed the whole point in this case and in doing so has wrought, I repeat, a grave injustice. It says that Zilka had to "prove that the blow struck him by a tree, or a part thereof, arose from an improper or careless operation of the bulldozer."

What else could Turner's operation be but "an improper or careless operation" of the bulldozer? Certainly the Majority does not argue that there is something normal or natural about trees soaring like legendary witches through the atmosphere? What was the plaintiff to show? He was at home with his wife. The two of them had decided to go into the town of Creigh-

ton that day to do some shopping. Zilka was waiting in the yard for his wife to get dressed for the trip and, while waiting, he watched the bulldozer which was separated from him by a ravine. Certainly he had no reason to anticipate that Turner would handle his equipment in such a way as to hurl part of the arboreal landscape at him.

Nor can it be said that Turner did not know of Zilka's presence. He waved to him, acknowledging his presence. Then he whipped his bulldozer around, spun it, threw the long sharp blade against a tree, providing the motive power to shoot it like a gigantic dart across the ravine, finding a target in the eye of Zilka who was innocently, immobilely, helplessly standing on his own property by his own home, waiting for his wife for an innocent journey into a neighboring town to attend to domestic chores incident to the maintenance of every home and family. For the Majority to see nothing unusual or extraordinary in this type of a happening is to say that it sees nothing unusual in a falling star or the sinking of a ship.

The Majority Opinion relates this whole shocking incident in a depreciating manner, but even its belittling of what occurred cannot detract from the flagrant dereliction of duty on the part of the operator of the bulldozer. The Majority keeps asking, as if it were posing the riddle of the sphinx: What was Turner doing that was wrong? The answer is written in every leaf and on every twig of that flying tree. Turner used too much power in applying the blade of his bulldozer to the object in his path. When an automobile strikes a pedestrian with such force that it hurls him into a trajectory which does not terminate until the victim lands on the macadam 35 feet away, it does not require the genius of an Einstein to figure out that the automobile was traveling at a high rate of speed. When a bulldozer hurls a tree—with roots, trunk and branches

—35 feet, what logical conclusion can there be but that the force applied to the bulldozer blade was excessive?

The Majority Opinion wants Zilka to show just how and why Turner conducted himself in the outrageous fashion which has brought disaster into Zilka's life. What can Zilka do more than to show that if Turner had operated his machine in a proper way the accident would not have occurred? The law in its wisdom has declared for over a century that " '. . . where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care.' "

Now and then it happens that one finds that the law is deficient in treating certain situations which call for correction, but there is no deficiency in the law which covers the litigation here before us. In the case of *Mack v. Reading Co.*, 377 Pa. 135, 139, from which the above quotation is taken, a truck was damaged when a heavy metal coupler became detached from a speeding train and hit the truck which was traveling on a road paralleling the railroad tracks. The owner of the truck brought suit in trespass against the railroad company and recovered a verdict. The defendant railroad company appealed, urging reversal on the basis that the plaintiff had not demonstrated wherein the defendant was negligent. This Court said: "it is not necessary, or indeed possible, in all cases to establish such proof by positive testimony . . . Both the equipment and the operation of the train were in the exclusive possession, control and management of the defendant and the accident was such as in the ordinary course of human experience would not have happened had proper care been exercised to prevent it. It certainly was quite extraordinary for a portion of a train's mechanism of the size

and weight of this coupler to become detached and be thrown off from the train in motion."

This Court quoted with approval from *Janock v. Baltimore & Ohio R. R. Co.*, 252 Pa. 199, where we said: "There are many instances where the burden resting on plaintiff may be met by proof of circumstances from which the jury are permitted to infer negligence on the part of defendant . . . To require plaintiff to prove affirmatively the exact source of the accident would usually in cases of this kind defeat recovery, however gross the negligence, as the person injured seldom has means of either knowing or discovering absolutely the defect in equipment or delinquency on the part of employees, both of which are entirely within the control of the defendant."

If the owner of the truck in the *Mack* case did not have to prove a defect in the train equipment, or just what it was the engineer or brakeman did which was wrong, why should Zilka have to prove with positive evidence the nature of Turner's dereliction? Turner, with his employer, had the burden of proof to show non-negligent conduct. He did not meet that burden. On the contrary, in relating how he handled his bulldozer in a routine day's work, he disclosed that he tore down a power line because he did not see it!

It was up to the defendant to explain the extraordinary occurrence of the flying tree whose flight began at the bulldozer; and if the explanation did not satisfy the jury that it was free of negligence, the jury could infer, and it did infer, negligence. If we are to be guided by precedent, what is the difference in principle between the *Mack* case and the one at bar?

The trial judge very properly charged the jury: "did Mr. Turner in operating the bulldozer, as the agent and employee of Sanctis Construction Company, Inc., exercise the care of an ordinary prudent person in the circumstances?"

The jury could find and undoubtedly did find that Turner not only did not exercise the care of an ordinary prudent man, he exercised no care at all. He was reckless almost to the point of wanton negligence. He had in his possession, by controlling with his hands, a weapon as dangerous as a shotgun. He fired it aimlessly, uncaringly.

Instead of affirming the just verdict of the jury, the Majority concludes that the plaintiff could not recover because he did not point to the particular lever which Turner manipulated, the pound pressure he exerted in pulling that lever, the defect, if any, which existed in the mechanism, which brought about disaster for him. The law can sometimes be inexorable in its demand of proof, but if it is to be regarded as the quintessence of reason it cannot demand of anyone that he present what is beyond his power to produce.

The Majority says that "there is not a scintilla of evidence of negligence in the operation of the bulldozer." Neither was there a scintilla of evidence of negligence presented by the plaintiff in the *Mack* case. He merely showed that the railroad train had discharged a heavy piece of iron into the circumambient air and that that iron plunged into his truck, and this Court said that that was enough to take the case to the jury. In this case the plaintiff showed that the defendant discharged a tree into the air and it hit him. It cannot be argued in behalf of the defendant in this case that the bulldozer operator did not want to throw the tree at the plaintiff; the engineer or brakeman of the train in the *Mack* case did not want to throw a metal coupler at the truck either.

In an attempt to find authority for its position, the Majority beats the bushes of the law and frightens out several rabbits of decisions which at the mere appearance of reason scamper back into their holes of irrelevancy, from which they might as well have never

emerged. One of them is the case of *White of Roydhouse,* 211 Pa. 13, where the defendant's employee struck a lump of unslacked lime with a hoe and a particle of it flew 15 feet to injure the plaintiff. The Court held that the plaintiff could not recover, but I do not see how that case can possibly be authoritative of this one. There, one could anticipate that a bit of lime might move 15 feet, but no one could reasonably expect that a tree would hurtle 35 feet, except in a Northwestern logging camp.

The Majority then cites the case of *Rockey v. Ernest,* 367 Pa. 538, where a bulldozer passed over a stone, and a fragment (about the size of a man's fist) snapped away to hit a person 20 to 25 feet away. One could expect that a stone coming beneath a wheel of a bulldozer could break and a fragment veer away, but not a tree! Pebbles are easily displaced and easily flung— but not a tree!

Then the Majority cites a North Carolina case (*Griffin v. Blankenship,* 248 N. C. 81) where a bulldozer and a tree were actually involved. In that case the tree when hit flew 15 feet. Even so, I can see a difference between a tree that travels 15 feet and one that soars 35 feet. One standing by a highway could expect that a passing automobile might splash water for a distance of 15 feet, but if the car moved with such speed that the water geysered and soaked a person sitting on his porch 35 feet away, the latter would certainly have the right to charge that the autoist was not using due care for others. Moreover, the *Mack* case is authority for all of Pennsylvania, whereas the North Carolina case is not.

The Majority does cite one case which is in point but the Majority ignores the sagacious and just principle it enunciates, namely, "The test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, re-

sulting from his act." (*Dahlstrom v. Shrum*, 368 Pa. 423.) That is exactly the situation here. The bulldozer operator could have anticipated and foreseen the likelihood of harm to others, and the jury was satisfied that he could have so foreseen. He was aware of the fierce potentialities of his bulldozer. He had shot one tree into the high tension wires; he was on notice as to what could happen to the trees that were being moved, pushed, struck and whipped by his bulldozer. He saw Zilka within the orbit of possibilities of his bulldozer. He could foresee the likelihood of harm to Zilka.

The Majority also quotes the illustrious United States Supreme Court Justice CARDOZO who said: "the orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty." Zilka was within the orbit of Turner's eyes, and because Turner temporarily closed his eyes to what was within that orbit, he permanently closed one of Zilka's eyes forever.

The Majority further quotes another immortal in the world of law, Justice OLIVER WENDELL HOLMES, who said: "Unless my act is of a nature to threaten others, unless under the circumstances a prudent man would have foreseen the possibility of harm, it is no more justifiable to make me indemnify my neighbor against the consequences, than to make me do the same thing if I had fallen upon him in a fit, or to compel me to insure him against lightning."

The lightning in this case was man-made; it was made by Turner's hand on the lever which hurled a thunderbolt which gouged out the eye of the innocent and helpless Zilka standing on his own property waiting for his wife as they were about to set out on a summer's day to view the beauties that nature offers and the good things that man can produce.

I am so convinced that the Majority has grievously erred in this case that I am compelled to say that while Zilka has been left half blind, Justice, in this particular piece of litigation, has been wholly blind.

Mr. Justice EAGEN joins in this dissent.