419 A.2d 12

Kathryn L. MIGYANKO, Executrix of the Estate of Phillip Alexander Migyanko, Deceased, on behalf of the next of kin of Phillip Alexander Migyanko, Deceased; and Kathryn L. Migyanko, Executrix of the Estate of Phillip Alexander Migyanko, Deceased, on behalf of the Estate of Phillip Alexander Migyanko, Deceased, and Kathryn L. Migyanko, Individually, and as parent and natural guardian of Steven C. Migyanko and Ronald J. Migyanko, minors, Appellants,

v.

Edward F. THISTLETHWAITE; Harry Litten; Geraldine Litten and Jack Litten, Individually and d/b/a Litten Service Station; Center Independent Oil Company; and The Borough of Jefferson,

and

Martin A. Niverth and Nellie Niverth, Individually and d/b/a Stoney Point Inn; and Harold Mitchell.

Superior Court of Pennsylvania.

Argued April 10, 1979.

Filed Jan. 18, 1980.

Reargument Denied March 13, 1980.

Petition for Allowance of Appeal Denied July 29, 1980.

William D. Phillips, Washington, for appellants.

Joseph M. George, Uniontown, for Center Independent Oil Co., appellee.

William M. Radcliffe, Uniontown, did not file a brief on behalf of Edward F. Thistlethwaite, appellee.

Philip T. Warman, Uniontown, did not file a brief on behalf of the Borough of Jefferson, appellee.

Before PRICE, HESTER and MONTGOMERY, JJ.

PRICE, Judge:

The instant appeal is from the order of the trial court granting the summary judgment motion of Center Independent Oil Company (Center), the sole appellee. For the reasons stated herein, we reverse the order of the trial court.

The facts pertinent to Center's motion for summary judgment arose out of an incident on February 21, 1977, in which appellant's decedent, Phillip Alexander Migyanko, was struck and killed by a vehicle driven by defendant, Edward F. Thistlethwaite. The decedent and his wife, appellant, were operating separate vehicles in the Borough of Jefferson in Greene County. While traveling through Jefferson along Route 188, the Migyankos decided to purchase gasoline at the Litten Service Station. The station consisted of two small buildings. The three pumps, in the fashion of bygone days, are located directly at the curb along Route 188. Although the deposition testimony is unclear, it appears from photographs entered into evidence that Route 188 is a four–lane undivided roadway, the two center lanes being utilized for travel with a single parking lane on either side. Vehicles utilizing the pumps at the Litten station received service by stopping at the curb in the parking lane on the west–bound side of the roadway.

At or about 8:45 p. m. on the evening of February 21, 1977, the decedent pulled his vehicle up to the unleaded gasoline pump at the Litten station. After filling his tank, he drove his vehicle several feet further up the street and parked it along the curb. He exited his vehicle and walked back along the curb to the unleaded pump where appellant had parked her vehicle and was in the process of receiving gasoline from an employee of the station. The gasoline tank on appellant's vehicle was in the rear, on the driver's side, thus requiring the attendant to stand in the parking lane near the west–bound lane of travel of Route 188. The decedent was also in the rear at the driver's side of the vehicle, conversing with the attendant. While so engaged, the decedent and the attendant were struck by defendant Thistlethwaite's vehicle, which had been traveling on the

opposite side of Route 188 in an easterly direction. Thistle-thwaite had apparently been drinking, lost control of his vehicle, and crossed the center line of the roadway over into the west–bound lane and into the adjoining parking lane. Decedent was killed by the impact of the collision, and the attendant was severely injured.

Appellant brought suit against appellee and various other parties for, *inter alia*, the wrongful death of her husband. In her complaint against appellee, appellant alleged three theories of negligence: (1) that appellee was vicariously responsible for the negligent acts of the Littens; (2) that appellee was solely liable for supplying the Littens with defective gasoline pumps; and (3) that appellee was solely responsible for "maintaining" the gasoline pumps in a dangerous manner. The trial court entered summary judgment on the basis of the first two theories, but did not address the applicability of the third. Appellant appeals from the summary judgment and alleges that the deposition evidence was sufficient to raise a triable issue regarding appellee's liability for "maintaining" the pumps at the Litten station. To understand the legitimacy of appellant's contention, it is necessary to expand upon the relationship between appellee and the Littens.

In or about November of 1960, Harry Litten purchased the gasoline station in question and on November 15, 1960, entered into an agreement with appellee to lease two gasoline pumps and other items of equipment generally associated with the maintenance of a service station. The testimony did not establish whether the pumps were installed by appellee at that time, or whether they had been installed for the benefit of the previous owner of the station. Total consideration for the lease was $1.00 and it provided that "[t]he said equipment shall at all times be and remain the property of [appellee]." Although the lease further provided that Harry Litten would maintain and repair the pumps when necessary, in actuality, appellee repaired the pumps whenever requested to do so. Harry Litten operated the station from 1960 until 1975, and in 1975 leased the station

to his son and daughter–in–law, Jack and Geraldine Litten, for a consideration of $100.00 per month. Besides the original $1.00 paid for the lease of the pumps and other equipment, appellee's only interest in the station was the profit it derived from the sale of gasoline and oil products to the Littens.[1] Appellee had no control over the management of the station. In 1977, Jack Litten requested that appellee install a third pump to permit the dispensing of unleaded gasoline. The unleaded pump was installed by appellee along the curb line of Route 188 adjacent to the two existing pumps, and the two pumps were replaced as part of normal maintenance.

In consideration of the above facts which were established through deposition testimony, the trial court entered summary judgment on behalf of appellee. On appeal, appellant has chosen not to challenge the judgment of the court that the pumps at the Litten station were not defective and that appellee may not be held responsible for any negligence on the part of the Littens on the theory of respondeat superior. Instead, she alleges that the court erred in entering summary judgment on her third theory of liability, which was not addressed by the court, to–wit, that appellee was independently negligent in placing and maintaining the pumps in such a manner as to expose a customer utilizing the pumps to unreasonable risks of harm of the type suffered by appellant's decedent. We agree that a reasonable question exists as to appellee's liability, and therefore, reverse the summary judgment as it relates to this final theory.

When confronted with a motion for summary judgment, a trial court should grant the motion only if "there is no

1. The 1960 lease provided that Harry Litten was required to purchase and dispense gasoline and other products only from appellee. Testimony established, however, that at some unspecified time, appellee informed the Littens that it would have difficulty in meeting all of their gasoline requirements, and that they should make arrangements to procure a supply from another distributor. Thereafter, the Littens did purchase gasoline from another distributor, but only after being informed by appellee that it would not be able to supply their requirements for the particular month in question.

genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. No. 1035(b). Although we do not have the benefit of the trial court's ruling as to appellant's third theory of liability, we do not believe the evidence presented in support of its summary judgment motion establishes as a matter of law that appellee was not independently negligent in installing and maintaining the pump being utilized by the decedent on February 21, 1977.

On appeal, appellant claims that appellee was under a duty of care to protect decedent and other third parties from unreasonable risks associated with the placing and maintaining of the pumps along the curb line of Route 188 in the borough of Jefferson. In determining the existence of a duty of care, the time honored test formulated by Judge Cardozo is that "[t]he risk reasonably to be perceived defines the duty to be obeyed . . .." *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928). *See, e. g., Zilka v. Sanctis Construction, Inc.*, 409 Pa. 396, 186 A.2d 897 (1962), *cert. denied*, 374 U.S. 850, 83 S.Ct. 915, 10 L.Ed.2d 1070 (1963); *Hoover v. Sackett*, 221 Pa.Super. 447, 292 A.2d 461 (1972). Only when the question of foreseeability is undeniably clear may a court rule as a matter of law that a particular defendant did not have a duty to a particular plaintiff. *Metts v. Griglak*, 438 Pa. 392, 264 A.2d 684 (1970); *Palsgraf v. Long Island Railroad Co., supra.*

In *Noon v. Knavel*, 234 Pa.Super. 198, 339 A.2d 545 (1975), we held by implication that a business may be held to have acted negligently in its placement of a chattel for use by its invitees when the placement unreasonably subjected the invitee to a risk of danger from an outside source. In that case, the defendant telephone company was found negligent in its placement of a telephone booth along a roadway when the location was at a dangerous portion of an S–curve and subjected any patron to a risk that a motorist would lose control of his vehicle and strike the telephone booth.

In addition to the precedent established in *Noon v. Knavel, supra*, regarding the negligent placement of chattels, a

regulation promulgated in 1971 further alerted appellee to the dangers associated with the placement of gasoline pumps along the curb of a traveled highway. That regulation provided that:

> "[d]ispensing devices at automotive service stations shall be so located that all parts of the vehicle being served shall be on the premises of the service station, with the exception that existing service stations for which prior approval has been issued, not meeting this requirement, may continue in service *without an increase in number or capacity of tanks, if properly maintained. Existing pumping units may be replaced; however, no additional pumps may be installed.*" 37 Pa.Code § 13.112(1) (emphasis added).

Appellee is presumed to have been on notice of this regulation and to have been aware that its action in installing the unleaded pump in 1977 was in violation of it. Based upon the concepts of duty and foreseeability, combined with the case law and statutory precedents of *Noon v. Knavel* and the above regulation, we conclude that a duty may have existed on the part of any party involved in the installation of the pumps to protect patrons from unreasonable risks of harm of the type suffered by appellant's decedent.

Indeed, the more difficult question is whether appellee's involvement in the placement and maintenance of the pumps was sufficient to hold it to an independent duty of care. Although the trial court made a determination that as a matter of law the negligence of the Littens in the placement of the pumps could not be imputed to appellee under a theory of respondeat superior, the court made no determination regarding appellee's independent responsibility for their placement.

Although the testimony revealed that at least since 1960 appellee has owned the pumps at the Litten service station, it was not established what role appellee played in the installation of the original two pumps prior to 1960. The evidence did show that appellee was solely responsible for the installation of the unleaded pump being utilized by the decedent. Again, however, it is unclear whether the selec-

tion of the location for the unleaded pump, which was placed in violation of the regulation prohibiting installation of additional pumps along the curb line, was the independent act of the Littens or the result of a conscious choice by appellee. Finally, contrary to the lease agreement, appellee took an active interest in the repair and maintenance of the pumps.

Based upon the above summary, we cannot say as a matter of law that appellee's role in the installation of the unleaded pump was so tenuous as to prohibit the imposition of a duty of care with respect to its location. This is not a situation in which a lessor of a chattel severs all relationship and control with respect to the chattel such that any liability to third parties arising from the use of the leased chattel rests solely on the part of the lessee. *See Brower v. Employers' Liability Assurance Co.*, 318 Pa. 440, 177 A. 826 (1935); *Hajduk v. Fague,* 200 Pa.Super. 55, 186 A.2d 869 (1962). Instead, this may be a situation in which the lessor is charged with a duty of care even after the chattel passes to the possession of the lessee. *See Griffith v. Clearfield Truck Rentals, Inc.,* 427 Pa. 30, 233 A.2d 896 (1967); *Lambert v. Richards–Kelly Construction Co.,* 348 Pa. 407, 35 A.2d 76 (1944); *Evans v. Goldfine Truck Rental Service Co.,* 241 Pa.Super. 329, 361 A.2d 643 (1976). This is especially true in light of the token nature of the consideration for the lease in 1960 and appellee's subsequent involvement in the repair and installation of an additional pump throughout the intervening years until the time of this accident in 1977. Given the nexus between appellee and its ownership interest and installation of the unleaded pump, as well as the unanswered question regarding appellee's role in the selection of the location for that pump, we may not conclude as a matter of law that appellee was not under a duty of care with respect to the location of its chattels. Accordingly, the summary judgment entered in favor of appellee is reversed as it relates to appellant's third theory of liability.

The order of the trial court is reversed.

HESTER, J., files a dissenting statement.

HESTER, Judge, dissenting:

I dissent. I would affirm on the Opinion of Judge Franks of the court below.