Stanik *v.* Steuber, Appellant.

Argued January 16, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Lawrence E. Wood,* for defendant, appellant.

*John S. Halsted,* with him *Gawthrop & Greenwood,* for additional defendant, appellee.

*C. Richard Morton,* for additional defendant, appellee.

OPINION BY MR. JUSTICE POMEROY, July 2, 1970:

After dark on the evening of May 26, 1967, one Barry Glassman, accompanied by several acquaintances,

was driving east on the Pennsylvania Turnpike. Toward the end of a stretch of highway which curved gradually to the right, Glassman's automobile ran out of gas, although the car's gasoline gauge indicated that the tank was still one-quarter full. Glassman parked his car on the road shoulder leaving a clearance of some three to four feet between the main roadbed and the driver's side of the vehicle. Glassman, together with a companion, walked forward on the shoulder of the highway and standing some feet in front of his parked car attempted to flag down passing motorists hoping to get a ride to the nearest gas station.

Shortly thereafter, the driver of an Oldsmobile, whose identity remains unknown, stopped in front of Glassman's vehicle and proposed to syphon gas from his car to Glassman's. Acting over protests from Glassman that he would rather be taken to a gas station and that the syphoning operation would not be successful, this second driver backed his car up using the slow lane of the Turnpike and attempted to place his car in such position relative to Glassman's car that syphoning could be effected. In the course of this maneuver, the driver pulled the Oldsmobile onto the Turnpike, headed toward and against the medial guardrail; the car was thus perpendicular to the flow of traffic and blocked the entire passing lane and part of the slow lane.

At this point a third automobile came around the curve traveling in the passing lane of the highway at a speed of sixty to sixty-five miles per hour. Riding in the car were Ronald L. Stanik, the driver, Donna Stanik, his wife, and Louis and Sophia E. Stanik, the father and mother of Ronald. Stanik, attempting to avoid a collision with the Oldsmobile, skidded and came to rest in a position parallel to, but not touching, the Oldsmobile, with its front end locked on the medial bar-

rier. Almost immediately thereafter while Stanik's car was still in this position, two other cars came into view. One, driven by Edward Latinsky, was in the slow lane and was traveling at approximately fifty-five miles per hour; the second, driven by William Steuber, was in the passing lane slightly to the rear of Latinsky's car and was traveling at roughly sixty miles per hour. In the ensuing effort to avoid a collision with the Stanik automobile, Latinsky first braked, but realizing that it would be impossible to stop in time, he then drove forward, passing unscathed through the narrow gap between the Stanik automobile and Glassman's car which which was still parked on the berm. Steuber, also reacting to the Stanik car blocking his lane of travel, moved his car to the right in an attempt to make room by forcing Latinsky to the shoulder; in so doing he hit the left rear quarter panel of the Latinsky car, and rebounded somewhat to his left. He was unable to stop in time and hit the Stanik car broadside and slightly to the rear of the middle.

This entire series of incidents, from the positioning of the Oldsmobile on the highway to the collision between the Steuber and Stanik vehicles, took place in a matter of moments. At some point in the course of the action, the driver of the Oldsmobile drove off and left the scene; whether this was done immediately before or just after the Stanik-Steuber accident cannot be determined from the evidence. Although it was observed that the Oldsmobile had a Delaware license plate, its number was not taken by anyone at the scene of the accident, and the identity of its driver was never determined.

As a result of this chain of events, separate actions in trespass were brought against William Steuber at Nos. 27 and 28, January Term, 1968 in the Chester County Court of Common Pleas by the filing of com-

plaints by Ronald L. and Donna Stanik and by Louis and Sophia E. Stanik, respectively. Steuber then filed a third-party complaint in No. 27 naming Latinsky, Glassman and John Doe (the unknown driver of the Oldsmobile) as additional defendants and a like complaint in No. 28 naming Latinsky, Glassman, Ronald Stanik and John Doe as additional defendants. Depositions were taken, following which motions for summary judgment were filed by defendant Steuber and additional defendants Glassman and Latinsky pursuant to Pennsylvania Rule of Civil Procedure 1035. The lower court granted the motions of Latinsky and Glassman but denied that of Steuber. The present appeals are brought by defendant Steuber from the judgments entered in their favor. We affirm.

The third party complaints filed by Steuber alleged that Latinsky "drove at such speed as not to be able to bring his car under control and to avoid a collision when confronted by an emergency, and he was otherwise careless in the operation of his vehicle." Nothing in the record before us supports those allegations. There is no suggestion in the depositions that Latinsky was not traveling well within the posted speed limit (sixty five miles per hour), and the evidence refutes any assertion that he was unable to control his car and avoid a collision. Indeed, faced with an unexpected obstruction of the highway, Latinsky seems to have driven with considerable skill and care, negotiating the passage between the vehicles on the highway and Glassman's automobile on the berm, notwithstanding the fact that Steuber bumped his car from the left as he was preparing to do so. The allegation that Latinsky was "otherwise careless" is equally devoid of support.

Appellant contends that Latinsky's conduct (presumably his mere presence on the highway beside Steuber, since he remained in his own lane of traffic

and could not have moved further to his right onto the berm without colliding with the Glassman vehicle and the passengers therein) prevented Steuber from avoiding a collision with the Stanik vehicle and thus was a legal cause of the accident. Legal cause, however, presupposes a negligent act, and the cases relied upon by appellant do not support the proposition that there can be liability without negligence in a case of this kind. The lower court determined that there was no basis for finding Latinsky negligent and entered summary judgments in his favor. We find no error in its action in this regard.

Appellant's third party complaints as to Glassman alleged that he had "permitted his car to become disabled although this could have been avoided, and he created an unnecessary obstruction on the highway and was illegally parked." Initially it may be noted that Glassman's vehicle was not an obstruction on the highway and was not illegally parked; on the contrary, it was parked off the highway in the area provided for emergency stops and disabled vehicles, and its parking lights were on to warn approaching motorists of its presence. See The Vehicle Code, Act of April 29, 1959, P. L. 58, §1020, as amended, 75 P.S. §1020.

On this record, the only possible negligence attributable to Glassman was his reliance on a defective gasoline gauge. Even without this excuse, however, we do not see how Glassman can be charged with negligence; the cause of his having stopped his car on the shoulder of the highway, well away from the main traveled portion of the highway, was immaterial under the facts of this case. Even if we were to assume, however, for the sake of argument, that Glassman was negligent in allowing his car to run out of gas, it is clear that the ambit of risk created thereby did not encompass the harms sustained by the plaintiffs and the appellant in

the Steuber-Stanik collision. As indicated, Glassman took full and adequate precautions to remove his car from the highway and warn other motorists of its presence. The unidentified driver acted over Glassman's protests, in backing his car up on the highway surface and in placing his vehicle directly across the traffic lanes of a heavily-traveled highway. His actions were not attributable to Glassman and can scarcely be said to be either reasonably foreseeable by Glassman or the normal consequence of Glassman's failure to repair his gasoline gauge. The almost incredible stupidity and recklessness of these intervening acts of the unknown driver would serve to insulate Glassman, if insulation were needed, from any liability for their consequences. See *Metts v. Griglak,* 438 Pa. 392, 264 A. 2d 684 (1970); *Hendricks v. Pyramid Motor Freight Corp.,* 328 Pa. 570, 195 Atl. 907 (1938); and *Restatement (Second) of Torts,* §447 (1965). Under the facts of this case, we hold that the lower court did not err in concluding that Glassman's actions, if negligent, were not the legal cause of the harms suffered. Summary judgments were, therefore, properly entered in Glassman's favor.

Judgments affirmed.