Noon *v.* Knavel (et al., Appellant).

200

Argued November 13, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Charles Kirshner,* with him *R. Thomas Strayer,* and *Rosenberg, Kirshner & Solomon,* for appellant.

*Gary F. Sharlock,* with him *Sharlock & Repcheck,* for appellee, The Baltimore & Ohio Railroad Company.

*J. Phillips Saylor* and *Samuel R. DiFrancesco, Jr.,* with them *Robert G. Rose, James R. Di Francesco, James F. O'Malley,* and *Spence, Custer, Saylor, Wolfe & Rose, Gleason, Di Francesco, Shahade & Markovitz,* and *Yost & O'Malley,* for appellees.

OPINION BY HOFFMAN, J., April 22, 1975:

Appellant, the General Telephone Company of Pennsylvania, contends that the lower court erred in failing to grant its motion for judgment non obstante veredicto on the grounds that its negligence was not the proximate cause of appellee Noon's injuries.

Appellant, a public utility, was the owner of a public telephone booth which was located immediately adjacent to the grade crossing of the Baltimore and Ohio Railroad at Bedford Street in the City of Johnstown. The telephone booth was located approximately 9½ feet from the curb

of Bedford Street, and only five feet from the railroad track, so close that it was actually located on the railroad's right-of-way. The railroad tracks run approximately north and south. The approach to the grade crossing from the east, down Bedford Street, includes a long downgrade. Immediately before the grade crossing, and beginning approximately at the intersection of Adams Street, vehicles must traverse an S-curve while still proceeding downhill, and be prepared to brake at the railroad crossing, which is marked by flashing lights, but not protected by crossing gates. The telephone booth was located in such a position that an automobile coming downhill which failed to negotiate the second half of the S-curve could easily strike the booth. Despite this fact, no special safety precautions were taken in the construction of the booth. The jury found that appellant's placement of the booth created an unreasonable danger to appellant's customers, and thus constituted negligence on the part of appellant. No appeal has been taken from the finding of negligence, but only from the finding that this negligence was a proximate cause of the injuries involved in this suit.

On August 30, 1969, Jan E. Knavel, a defendant below but not a party to this appeal, noticed that his car's brakes were not functioning properly. At approximately 9:30 p.m., Knavel visited Allison's Service Station, which was located approximately two blocks from Knavel's home. Ned J. Allison, the proprietor of the station (also a defendant below), informed Knavel that he lacked the necessary parts required for permanent repairs. Knavel then requested that temporary repairs be made on the brakes. Allison then plugged the hydraulic brake line leading to the left rear wheel, and instructed Knavel to return his car the next day for permanent repairs. Despite this warning, Knavel drove some 14 miles to a friend's residence in Rummel, where a cook-out was in progress. Knavel testified that he had no brake trouble on

this route. Knavel remained at the cook-out for approximately one and a half hours. During this time, he drank two beers. Knavel and his brother-in-law, Dean Fickes, then set out for "Coney Island" to get a hot dog. Knavel proceeded down Route 56, towards Johnstown. At about 2 a.m., a Dale Borough police officer, who had been parked by the side of the road, noticed Knavel illegally passing another car, and set out in pursuit. Knavel testified that about this time he noticed that his accelerator pedal was stuck in the half-way position, and that his brakes were not working at all. At one point, Knavel applied his emergency brake; this slowed the car momentarily but failed to stop it.

Despite this lack of control of his car, Knavel was able to avoid any collision until he reached the section of Bedford Street containing the treacherous S-curve and grade crossing. Testimony of some witnesses indicated that Knavel's car glanced off a light pole located on the outside of the first section of the S-curve. At approximately this point, Knavel first saw that a Baltimore and Ohio Railroad train had entered the grade crossing, southbound, at a speed of approximately two or three miles per hour, and now almost completely blocked the intersection. Knavel testified that he then gave up hope of controlling his car and simply closed his eyes, awaiting the collision. Knavel's car collided with the front of the slow-moving locomotive, then crashed through the phone booth in which appellee, Noon, was standing, making a telephone call. Knavel's car came to rest against an unoccupied car, on the property of the service station located adjacent to the phone booth. Although Knavel suffered only minor injuries, Noon lost both his legs as a result of the accident.

Noon brought suit against Knavel, Ned J. Allison, trading and doing business as Allison's Service Station, the Baltimore and Ohio Railroad Company, and the appellant, General Telephone Company of Pennsylvania. On

October 25, 1972, a jury in the Court of Common Pleas of Cambria County returned a verdict of $216,761.00 in favor of Noon and against Knavel and the General Telephone Company. Post-trial motions were denied and on October 26, 1973, the lower court entered judgment on this verdict. From this judgment, the General Telephone Company appealed.

## I

In general, an actor is liable for negligence if

"(a) the interest invaded is protected against unintentional invasion, and

"(b) the conduct of the actor is negligent with respect to the other, or a class of persons within which he is included, and

"(c) the actor's conduct is a legal cause of the invasion, and

"(d) the other has not so conducted himself as to disable himself from bringing an action for such invasion." Restatement of Torts 2d, § 281 (1965). In the instant case, there is no question that the interest in bodily integrity is protected against unintentional invasion. The jury below found that appellant's actions were negligent; no appeal has been taken from that finding. No issue of contributory negligence or assumption of risk is involved in this appeal. The only questions involved in appellant's request for a judgment n.o.v. are, therefore, whether its actions were negligent with respect to a person in Noon's position, and whether appellant's conduct was a legal or proximate cause of Noon's injuries.

It is well settled that the appellant "could be properly liable only with respect to those harms which proceeded from a risk or hazard the foreseeability of which rendered its conduct negligent." *Metts v. Griglak*, 438 Pa. 392, 396, 264 A.2d 684, 687 (1970). The Restatement refers to this as "the hazard problem;" it is sometimes referred to generally as a *Palsgraf* problem, after *Palsgraf*

*v. Long Island R. Co.,* 248 N.Y. 339, 162 N.E. 99 (1928).[1]
Comment e to Restatement of Torts 2d, §281(b), another
part of which is quoted in *Metts v. Griglak,* at 397, n. 2,
264 A. 2d at 687, n. 2, explains that "[c]onduct is negli-
gent because it tends to subject the interests of another
to an unreasonable risk of harm. Such a risk may be made
up of a number of different hazards, which frequently are
of a more or less definite character." Comment f notes
that "[w]here the harm which in fact results is caused
by the intervention of factors or forces which form no
part of the recognizable risk involved in the actor's con-
duct, the actor is ordinarily not liable."

Appellant's argument on this point, put simply, is
based on the assumption that the jury's finding that place-
ment of the phone booth was negligent was based solely
on its proximity to the S-curve and the downgrade in
the road, and was not based even in part on the fact that
the booth was located a few feet away from the railroad
track at a grade crossing. As this assumption is not ade-
quately supported by the record, appellant's argument on
this point must be rejected. Appellant's contention is ap-
parently based on one statement by William T. Jackman,
an engineer who testified as Noon's safety witness, taken
out of context. In this statement, Jackman noted that "be-
cause of the topography, the down grade, the two curves
in the street, it was only a matter of time before that an
accident was going to occur."[2] Nevertheless, Jackman re-
ferred to the railroad tracks several times in discussing
his opinion on the safety of the location of the booth. On
cross-examination, Jackman indicated that the proximity

---

1. Although this problem may be considered a separate
element of the cause of action for negligence, it is often treated
as an aspect of the problem of legal or proximate cause. See
Comment h to §281(b).

2. Although objection was made in the court below to the
conclusional form of the expert witness's statements, this issue
has not been raised on appeal.

of the booth to the railroad was one of the factors that led him to believe that the location was dangerous.

In addition, the jury was not limited to Jackman's testimony in determining whether or why the location of the booth was hazardous.[3] The jury took a view of the scene of the accident, studied some two dozen photographs of the scene, and heard several volumes of testimony concerning the circumstances of the accident. The jury had ample evidence, even apart from the expert testimony, to determine whether the location of the booth was hazardous, and is so, for what reasons. Indeed, the judge charged the jury to determine whether "it [was] foreseeable by the telephone company that the placement of the booth *at the railroad crossing* on Bedford Street, at the bottom of a grade, at the end of an S-curve, on highway Route 56, otherwise known as Bedford Street, that the risk of harm, such as that experienced by Mr. Noon, could occur?" (Emphasis supplied.)

On a motion for judgment n.o.v., the evidence and all reasonable inferences arising therefrom must be construed in the light most favorable to the verdict winner. *Flickinger Estate v. Ritsky,* 452 Pa. 69, 305 A. 2d 40 (1973). The jury might well have found that the phone booth was in a dangerous position because of its proximity to the railroad track, in addition to and in combination with its proximity to a dangerous curved and sloping road. We must, therefore, assume that such a finding was made. Thus, we must reject appellant's contention that the hazard of a grade crossing accident was not one of the hazards on which the finding of negligence was based. "It must be remembered that it is not this Court's function to substitute our judgment or evaluation of evidence where there is some credible evidence upon which to base the jury's verdict. As our Supreme Court said in *Smith v.*

---

3. After the expert witness delivered the statement on which appellant now bases this part of its appeal, appellant's counsel asked that it be stricken as usurping the function of the jury.

*Bell Telephone Co. of Pennsylvania,* 397 Pa. 134, 138-139, 153 A. 2d 477, 479-480 (1959): '[T]he evidence presented must be such that by reasoning from it, without resort to prejudice or guess, a jury can reach the conclusion sought by plaintiff, and not that the conclusion must be the *only* one which logically can be reached. . . .'" *Eldridge v. Melcher,* 226 Pa. Superior Ct. 381, 387, 313 A. 2d 750, 754 (1973). As the jury might reasonably have found that a railroad crossing accident was one of the hazards which made the placement of the booth negligent, and that the accident which actually occurred was a harm proceeding from that hazard, we cannot say on appeal that the hazard which rendered the placement of the booth negligent was unrelated to the harm which appellee, Noon, suffered.

Even though appellant's conduct was negligent, appellant can only be liable to Noon for Noon's injuries if its negligence was the proximate or legal cause of those injuries. Pennsylvania now follows the rules on legal cause set forth in the Restatement of Torts 2d, §§431 and 432. *Whitner v. Lojeski,* 437 Pa. 448, 263 A. 2d 889 (1970). Section 431 provides that "[t]he actor's negligent conduct is a legal cause of harm to another if

(a) his conduct is a substantial factor in bringing about the harm, and

(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." Section 432(1) provides that "[e]xcept as stated in Subsection (2) [dealing with concurrent forces, each of which alone is sufficient to produce the harm], the actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent." Thus, under Sections 431(a) and 432(1), in order for appellant's negligence to be proximate cause of Noon's injuries, it must first be found to be a factual cause of those injuries.

Although there is some confusion on this point in appellant's brief,[4] it appears that appellant contends that the negligent location of the telephone booth was not a factual cause of appellant's injuries. Appellant contends that Noon's injuries would have occurred even if it had exercised due care in the location and construction of the telephone booth. While it is hypothetically possible that Noon might have been struck by Knavel's car even if the telephone booth had been located slightly farther from the grade crossing, the jury might reasonably have found that Noon would not have been injured at all had the appellant exercised due care in positioning the booth. It appears that if the booth had, for example, been placed inside the service station, as suggested at one point by Noon's expert witness, Noon would not have been injured at all.[5] Moreover, Comment b to §432(1) indicates that "this Subsection is most frequently, although not exclusively, applicable where the actor's tortious conduct consists in a failure to take some precautions which are required for the protection of another's person or land or chattels. In such case, if the same harm, *both in character and extent,* would have been sustained even had the actor taken the required precautions, his failure to do so is not even a perceptible factor in bringing it about and cannot be a substantial factor in producing it." (Emphasis supplied.) It was not unreasonable for the jury to decide that, had the booth been located in another, safer, location, either Noon would not have been injured, or he would not have sustained injuries of the same character and extent. Therefore, we cannot now say that appellant's negligence was not a cause in fact of Noon's injuries.

---

4. Thus appellant states that "[a]lthough the location of the phone booth certainly was a factual cause of the injuries to the Plaintiff, it was not the legal cause."

5. Appellant's agent also testified that telephone booths at certain locations are protected by four- or five-inch steel bumper posts; no such posts were used to protect the booth involved in this case.

Appellant next contends that, even if its negligence was a cause in fact of Noon's injuries, several events leading up to the accident were so highly extraordinary as to constitute superseding causes of the accident. Appellant cites the Restatement of Torts 2d, §440, which defines a superseding cause as "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." It does not appear that any of the factors listed by appellant would amount to a superseding cause either under the Restatement or under Pennsylvania law.

First, appellant argues that Knavel's various acts of negligence in driving a defective car, driving after drinking, and failing to take appropriate preventive action when he discovered that his car was going out of control amount to a superseding cause of appellant's injury. Note, however, that under the theory of this case appellant was negligent because it failed to take reasonable precautions to protect its business invitees against harm inflicted by vehicles driven by third persons.[6] Section 449 of the Re-

_____

6. Restatement of Torts 2d, §344, provides that "[a] possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it." Comment (b) indicates that this section includes "persons outside of the land whose acts endanger the safety of the visitor." This section has been followed in *Glass v. Freeman*, 430 Pa. 21, 240 A. 2d 825 (1968) (child drove unattended tractor, which struck invitee) and *Moran v. Valley Forge Drive-In Theater, Inc.*, 431 Pa. 432, 246 A. 2d 875 (1968) (firecracker exploded in theater rest room).

statement of Torts 2d, provides that "[i]f the likelihood that a third person may act in a particular manner is the hazard *or one of the hazards* which makes the actor negligent, such an act *whether innocent, negligent, intentionally tortious, or criminal* does not prevent the actor from being liable for harm caused thereby." (Emphasis supplied.) See *Glass v. Freeman,* 430 Pa. 21, 240 A. 2d 825 (1968) and *DeMaine v. Brillhart,* 224 Pa. Superior Ct. 241, 303 A. 2d 506 (1973), applying this section as the law of Pennsylvania. As appellant was under a duty to exercise reasonable care to protect Noon from the accidental, negligent, or reckless acts of drivers, the fact that a particular driver happened to act negligently or recklessly should not serve to prevent it from being liable for the consequences of the breach of that duty. Thus, Knavel's negligence could not amount to a superseding cause of Noon's injuries.

In regard to the intervening acts of persons other than Knavel, appellant cites the Restatement of Torts 2d, §447, which provides in part that "[t]he fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if . . .

(b) a reasonable man *knowing the situation existing when the act of the third person was done* would not regard it as highly extraordinary that the third person had so acted . . . ." (Emphasis supplied.) Appellant's citation of this section is puzzling, as none of the actors except appellant and Knavel were found to be at all negligent in this action. However, even assuming that the actions of Allison, the Baltimore and Ohio Railroad, and other actors were negligent, it is hard to say that their actions were "highly extraordinary," viewed at the time when those actions were taken. Thus, it was not highly extraordinary for Allison to make an inadequate temporary repair to Knavel's car's brake system when Knavel, who

lived two blocks away, approached him late at night and when Allison lacked parts to make a permanent repair. It was not highly extraordinary for the Dale Borough police officer to pursue Knavel when he observed Knavel riding through their town with his car out of control. Nor was it highly extraordinary for the locomotive engineer to be unable to prevent a collision when Knavel's car hurtled towards the grade crossing, out of control, at approximately 70 miles per hour. See *White v. Rosenberry*, 441 Pa. 34, 271 A. 2d 341 (1970), on the application of this principle.

It appears that appellant's real claim is that the exact manner in which this particular accident occurred could not have been foreseen by a reasonable man in appellant's position. But this has never been a requirement of the law of negligence. As Mr. Justice HOLMES long ago stated, "It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye." *Munsey v. Webb*, 231 U.S. 150, 156, 34 S. Ct. 44, 45 (1913). In Pennsylvania, it has long been held to be reversible error to instruct a jury that, in order to be negligent, the defendant must have been able to foresee the particular accident which in fact occurred. *Shipley v. Pittsburgh*, 321 Pa. 494, 184 A. 671 (1936). In accord is §435(1) of the Restatement of Torts 2d, which states that "[i]f the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw *nor should have foreseen* the extent of the harm or the manner in which it occurred does not prevent him from being liable." (Emphasis supplied.)

Although appellant is correct is stating that it can only be liable for foreseeable harm, its argument in this case is based on a misapplication of the foreseeability standard. First, appellant asks us to usurp the jury's function in determining what is foreseeable when reason-

able men might disagree, contrary to our Supreme Court's recent statement that "[w]hat the original actor should have realized and what a reasonable man would say was highly extraordinary are, of course, fact questions which must in the majority of cases be left to the jury." *Flickinger Estate v. Ritsky,* supra, at 75, 305 A. 2d at 43. Second, appellant asks us to determine whether the happening of this particular accident was foreseeable, whereas the test under negligence law has always been whether the hazard of accidents of this general type was foreseeable.

The jury below was justified in finding that appellant's negligence was the proximate cause of appellee Noon's injuries, and the court below did not err in refusing to grant a judgment n.o.v.

## II

Appellant argues that if it is not entitled to judgment n.o.v., it is, in the alternative, entitled to a new trial.

Appellant first contends that two computer printouts of summaries of accidents, reported to the Commonwealth's Department of Transportation, which occurred in the vicinity of the accident site, were inadmissible hearsay. Appellant contends that although the records might otherwise be admissible under the Uniform Business Records as Evidence Act of May 4, 1939, P.L. 42, No. 35, §§1 and 2, 28 P.S. §§91a and b, they were inadmissible because the persons who entered the accident reports were not necessarily witnesses to the accidents therein reported, nor were the reports prepared under the direction or control of such witnesses. Appellant contends that these reports were, therefore, inadmissible hearsay, citing *Haas v. Kasnot,* 371 Pa. 580, 92 A. 2d 171 (1952). Noon had these printouts admitted into evidence out of order so that Theresa Napoli, a Division Chief in the Pennsylvania Department of Transportation, could be present to authenticate them. Noon's attorney at that

time believed that Jackman, his expert witness, would rely on them as the basis of his opinions. When it appeared that Jackman would not rely on this evidence, and that several of the defendants had objections to its admissibility, Noon, the original proponent of the evidence, moved that it be withdrawn from evidence. Appellant, however, objected to this withdrawal from evidence. As appellant objected to a motion in the trial court which might have served to cure this alleged defect, he cannot complain of it on appeal.

Second, appellant contends that the lower court erred in failing to grant a new trial as to Noon's case against Ned J. Allison, trading as Allison's Service Station. Appellant contends that the judgment in favor of Allison was against the weight of the evidence. "The grant of a new trial is within the sound discretion of the trial judge, who is present at the offering of all relevant testimony . . ."; an appellate court will reverse that decision "if it determines that [the lower court] acted capriciously or palpably abused its discretion." *Austin v. Ridge,* 435 Pa. 1, 4, 255 A. 2d 123 (1969). "A new trial should be awarded on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Burrell v. Philadelphia Electric Company,* 438 Pa. 286, 289, 265 A. 2d 516 (1970). Appellant contends that certain statements by Allison to the effect that he made an "improper repair" on Noon's car constituted a complete and binding admission of liability in this action. A juror might reasonably have concluded that although the repair which Allison made on Knavel's brakeline would not equip Knavel's car to pass inspection or drive cross country, but nevertheless have believed that the repair was sufficient to allow Knavel safely to traverse the two blocks to

his home.[7] Moreover, even if the jury believed that Allison had been negligent in making the repair, it might have concluded that a faulty repair made to serve for a two-block trip was not the proximate cause of an accident occurring after miles of highway driving.

Finally, appellant contends that the testimony of one witness to the effect that Knavel did not have insurance requires that a new trial be granted. However, the answer came out on cross-examination by appellant's own attorney,[8] and appellant cannot now object to its admission as error. In *Tuttle v. Suznevich*, 394 Pa. 614, 145 A. 2d 534, 149 A. 2d 888 (1958), a reference to insurance also came out on cross-examination by the appellant. The Supreme Court, per Justice MUSMANNO, refused to grant the appellant a new trial, stating that "[b]efore putting his question, cross-examining counsel might well have taken counsel of Proverbs, 26:27: 'Whoso diggeth a pit shall fall therein; and he that rolleth a stone, it will return upon him.'" 394 Pa. at 621, 149 A.2d at 891. The court immediately instructed the jury to disregard the answer, if they heard it.

Judgment of the lower court is affirmed.

———

CONCURRING OPINION BY PRICE, J.:

This case presents a situation in which the appellant's negligence created a "passive" situation, which was unable to wreak its remorseless destruction until acted upon by an external, independent force. The causation question in this type of situation was examined in depth by our Supreme Court in *Flickinger Estate v. Ritsky*, 452 Pa. 69,

———

7. Although Allison did not know Knavel's exact address, he knew that he lived within the small village of Alum Bank.

8. "Q. [by attorney for the appellant]: Did you ever find out the name of that driver?

"A. Knavel; because I went to see him about the damage, the jack, etc. I thought he had insurance and he didn't have."

305 A.2d 40 (1973). There Justice POMEROY, writing for a unanimous court, acknowledged that the issue of causation could not be resolved by resort to the label "passive." Instead, *Restatement (Second) of Torts* §447 (1965) governs. That section provides that the negligent intervening act of a third person (such as that of defendant Knavel in this case) does not relieve a defendant of liability if:

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

Comment a to clause (a) of §447 refers the reader to §449, which provides:

"If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act *whether innocent, negligent, intentionally tortious, or criminal* does not prevent the actor from being liable for harm caused thereby." (Emphasis added)

As the majority notes, the record in this case more than adequately supports an inference that the hill and the S-curve were not the only features which made the location of appellant's phone booth unreasonably precarious. The record supports the inference that the negligence involved was the placement of the booth in an area where drivers were likely to lose control of their automobiles. The fact that the driver of this particular car may have been drinking, the fact that his accelerator may have malfunctioned, and the fact that his brakes may have been in disrepair are all factors which combined to

cause him to lose control of the automobile. Because an uncontrolled automobile is the hazard to which appellant's negligence exposed appellee, the manner in which control was lost cannot operate to relieve appellant of liability. *Restatement (Second) of Torts* §449, *supra*. Nor can the fact that the automobile richocheted from the train in its path, instead of flying directly into the phone booth, prevent appellant's liability. Once appellant assumed the risks of an uncontrolled automobile, the manner in which that uncontrolled automobile was directed into the phone booth was also one of the risks assumed. *Restatement (Second) of Torts, supra,* §§435 (1), 442 B.

Because appellant's negligence was a cause in fact of appellee's injuries, and the manner in which the accident occurred is exactly the risk which appellant created, I concur in the majority's decision to affirm the Judgment of the lower court.

———

DISSENTING OPINION BY JACOBS, J.:

In the early morning hours of August 31, 1969, appellee Robert Noon, plaintiff below, was severely injured when an automobile operated by Jan E. Knavel smashed through the telephone booth where Mr. Noon was attempting to place a call. In this appeal, the appellant General Telephone Company of Pennsylvania argues, *inter alia,* that the location of its telephone booth, wherein the plaintiff was injured, did not constitute a proximate cause of the accident and consequently appellant should be granted a judgment n.o.v. I agree that the placement of the booth was not a substantial factor bringing about this accident and would therefore reverse the decision below.

The telephone booth where Mr. Noon was injured was located at the edge of the paved area of a service station along Bedford Street, a road leading into the City of Johnstown. Bedford Street runs approximately east-west, with traffic inbound to Johnstown coming in from the

east, moving west to the city. The telephone booth was positioned on the south side of the road and sidewalk. Directly to the east of the booth a line of railroad tracks runs approximately north and south.

The booth and the tracks are at the bottom of a hill which rises to the east upon which Bedford Street executes an S-curve. Thus traffic approaching the city from the east proceeds downhill while it negotiates first a left and then a right hand curve before crossing the tracks and continuing past the phone booth on its left. The tracks are marked with a regular stoplight which turns red when trains approach, as well as flashing lights to warn traffic.

The events which culminated in the Knavel car striking Robert Noon in his telephone booth were set in motion on the evening of August 30, 1969. On that date, Jan E. Knavel, whose driver's license was suspended, was driving around with another man when he noticed that his brakes were not operating properly. He took his car to Allison's Service Station, located only two blocks from Mr. Knavel's home.[1] Mr. Knavel requested that temporary repairs be made on the brakes when he found that Mr. Allison was unable at that time to make the necessary permanent repairs. Mr. Allison proceeded to plug the hydraulic brake line to the left rear wheel[2] and instructed Mr. Knavel to return the vehicle the next day for proper

---

1. This is not Jan Knavel's present address. Since the incident discussed herein, he has moved to Ohio.

2. This is a temporary measure for fixing a broken brake line and is not to be equated with a proper repair of the system. It merely prevents all the brake fluil from leaking out, thus depriving the car of brakes entirely. By plugging the line to the left rear wheel, that wheel itself has no brake although the brakes on the other three wheels are still operating. The result of this is that the vehicle is operating with only three-quarters of its braking system, and any attempt to slow or stop by application of the hydraulic brakes tends to pull the car to the right, i.e, away from the free running wheel.

repairs. Aware that his car was in a defective condition, Mr. Knavel drove himself and his companion to a cookout some distance away over hilly terrain. There he drank and socialized, leaving around 1:30 a.m. to drive into Johnstown. About a half hour later, as he was approaching Johnstown, a police officer, parked in his patrol car at the side of the road, observed him commit a traffic violation by passing another car in an intersection at a high rate of speed.

The police set out in pursuit, but the Knavel car continued to accelerate. Mr. Knavel testified that about this time he noticed his accelerator pedal was stuck in the half-way position and that his brakes were not operating at all. He testified further that he attempted to remedy the situation by tapping on the gas pedal, which only served to drive it to the floor and increase the forward speed of his vehicle. He stated also that he attempted to apply the emergency brake. That slowed the car somewhat before it too failed. A number of other witnesses testified that the Knavel car slowed down on one or more occasions, at one point leaving long skid marks on the pavement which pulled to the right, onto the curb, in the manner of a car having no brakes on the left rear wheel.

Travelling at speeds estimated between 70 and 80 miles an hour, pursued by the police car with its emergency lights flashing and siren sounding, the Knavel car entered the downhill, S-curving stretch of road preceding the track and telephone booth. At that precise moment, a train operated by the Baltimore and Ohio Railroad Company was advancing slowly into the intersection from the north. Testimony of some witnesses revealed that the speeding car glanced off a steel light pole located on the outside of the first curve of the S-turn, striking the passenger side of the vehicle. It careened into the lane of opposing traffic and drove up on the sidewalk bordering the outbound lane approximately where the train tracks intersected with the road, apparently in an effort to avoid

collision with the train which at this point had almost completely blocked the roadway. Mr. Knavel denies this interpretation of his driving, however, and testifies that at that point he had given up hope of controlling his car and shut his eyes awaiting impact with the train.

The impact came, the passenger side of the car coming in contact with the front of the train engine. The collision hurled the car five or six feet into the air and onto the property of the gas station where it came to rest against an unoccupied car, still upright though facing in the opposite direction, a total wreck. In the path of the car's flight from the impact with the locomotive to the impact with the parked car was appellant's phone booth in which stood plaintiff-appellee, Robert Noon, making a call. The car's passage obliterated the booth and shattered the legs of its occupant in addition to causing serious injury to the remainder of his body. Mr. Noon was rushed to the hospital where both his legs were amputated and he was treated for his other broken bones and internal injuries. Jan E. Knavel, unscathed except for an abrasion on his forehead, fled the scene of the accident on foot. He turned himself in at the police station about an hour later.

The plaintiff-appellee brought suit against Mr. Knavel, Ned Allison, t/d/b/a Allison's Service Station, the Baltimore and Ohio Railroad Company, and the appellant, General Telephone Company of Pennsylvania. After a lengthy trial the jury returned a verdict for the plaintiff, Robert Noon, in the amount of $216,761.00 against defendants Jan E. Knavel and the General Telephone Company. A verdict was returned for Ned Allison and the Baltimore and Ohio Railroad. The General Telephone Company alone appealed, alleging error in the trial court's denial of its motion for judgment n.o.v. and motion for a new trial.

It is plaintiff-appellee's contention that appellant General Telephone Company was negligent in respect to Mr.

Noon by positioning its booth in unreasonable disregard of the safety of its occupants, and that the location of the booth was a proximate cause of the plaintiff's injuries. It is appellant's primary contention that, even assuming that the jury was correct in finding the location of the telephone booth unsafe, and appellant's conduct in positioning its booth negligent, any negligence on the part of the appellant was not a proximate cause of plaintiff-appellee's injury. I shall discuss the question of causation without deciding whether in fact the conduct of the telephone company in locating its booth was negligent.

Proximate cause is an expression widely utilized in tort law to comprehend all the varieties of diverse issues and considerations which are inherent in determining the responsible cause of a given result.[3] Much has been written by courts and commentators in hopes of clarifying this difficult subject[4] but the area is still largely, perhaps by nature, a wilderness and the available guides less precise than one might like. In Pennsylvania recent attempts have been made to bring order to the concept by dispensing with traditional labels and by isolating the separate elements of its compound nature.[5]

The fundamental principle underlying the issue of causation is that the mere existence of negligence and the occurrence of an injury cannot impose liability on anyone. *See, e.g., Whitner v. Lojeski,* 437 Pa. 448, 263 A. 2d 889 (1970); *Dornon v. Johnston,* 421 Pa. 58, 218 A.2d 808

---

3. *See* W. Prosser, Handbook of the Law of Torts §§41-45 (4th ed. 1971).

4. *See, e.g., Flickinger Estate v. Ritsky,* 452 Pa. 69, 305 A.2d 40 (1973); *Whitner v. Lojeski,* 437 Pa. 448, 263 A.2d 889 (1970); *Cuthbert v. Philadelphia,* 417 Pa. 610, 209 A.2d 261 (1965); *Majors v. Brodhead Hotel,* 416 Pa. 265, 205 A.2d 873 (1965); *Coyne v. Pittsburgh Rys. Co.,* 393 Pa. 326, 141 A.2d 830 (1958); *Wisniewski v. The Great Atlantic and Pacific Tea Co.,* 226 Pa. Superior Ct. 574, 323 A.2d 744 (1974); W. Prosser, Handbook of the Law of Torts, 236 n.1 (4th ed. 1971).

5. *See Whitner v. Lojeski,* 437 Pa. 448, 263 A.2d 889 (1970).

(1966); *Cotter v. Bell,* 417 Pa. 560, 208 A.2d 216 (1965); *overruled on application of principle, Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A.2d 623 (1970); *Cuthbert v. Philadelphia,* 417 Pa. 610, 209 A. 2d 261 (1965); *Majors v. Brodhead Hotel,* 416 Pa. 265, 205 A. 2d 873 (1965). The term proximate cause is used to describe that which ties together the act or omission of the defendant and the injuries sustained by the plaintiff. Expressed as a single concept, the term has been defined in Pennsylvania as "[t]hat which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *Coyne v. Pittsburgh Rys. Co.,* 393 Pa. 326, 334, 141 A. 2d 830, 835 (1958). The plaintiff has the burden of proving that the defendant's negligent conduct proximately caused the injuries complained of, by proving facts showing how the events occurred and how the defendant was responsible for those events, *Noel v. Puckett,* 427 Pa. 328, 235 A. 2d 380 (1967), or by producing evidence from which the fact-finder can draw a reasonable inference that the defendant's negligent acts were the proximate cause of the injury. *Zilka v. Sanctis Constr. Inc.,* 409 Pa. 396, 186 A.2d 897 (1962), *cert. denied,* 374 U.S. 850 (1963). It has further been stated that although the plaintiff need not produce such facts that irrefutably demonstrate with mathematical exactness the causal connection to be proven, he must introduce sufficient proof of causation to eliminate other conclusions fairly suggested by the evidence and preponderate in favor of the conclusion sought. *Cuthbert v. Philadelphia,* supra; *Smith v. Bell Telephone Co. of Pennsylvania,* 397 Pa. 134, 153 A.2d 477 (1959); *cf. Noel v. Puckett,* supra. These basic rules and expressions of the concept have developed in a considerable body of case law on the subject in Pennsylvania.

Recently, however, an attempt has been made to redefine the term and to distinguish its individual elements

as an aid in applying the concept to the cases. Recognition has been given to the view that factual cause is distinct from true proximate cause, which is often called "legal cause" for clarity's sake.[6] Whereas factual cause "is invariably a question of fact [proximate or legal cause] 'is essentially a problem of law . . . whether the defendant should be legally responsible for what he has caused.' W. Prosser, Law of Torts §49, at 282 (1964). 'It is [a question] of the policy as to imposing legal responsibility.' *Id.* at 309." *Flickinger Estate v. Ritsky,* 452 Pa. 69, 74, 305 A.2d 40, 43 (1973). Proximate or legal cause thus becomes a method employed by the courts for limiting the legal responsibility of an individual for the myriad consequences that could flow from his conduct. *See* W. Prosser, Handbook of the Law of Torts §§41, 42 (4th ed. 1971).[7]

On the other hand the concept of factual causation has been related to the Restatement (Second) of Torts §§431 (a), 432 (1965) by the Supreme Court in *Flickinger Estate v. Ritsky,* supra.[8] These sections express what has

6. The term "legal cause" has been adopted by some authorities, notably Dean Prosser in his treatise, Handbook of the Law of Torts §41 (4th ed. 1971), as preferable to "proximate cause," probably to eliminate all the spontaneous legal associations generally connected with the latter term. Justice POMEROY uses the terms interchangeably in his detailed discussion of the issue in *Whitner v. Lojeski,* 437 Pa. 448, 263 A.2d 889 (1970).

7. A close reading of Dean Prosser on this subject would suggest that he does not view factual causation as a concept totally separate from proximate cause, but rather sees it as an individual unit included within the larger concept, along with legal cause. Thus factual cause can operate to limit liability without the aid of a rule of law when a connection between the defendant's conduct and the injury cannot be proven. However, our courts have found it simpler and more expedient to simply separate the two at the outset. *See Flickinger Estate v. Ritsky,* 452 Pa. 69, 305 A.2d 40 (1973); *Whitner v. Lojeski,* 437 Pa. 448, 263 A.2d 889 (1970).

8. In *Whitner v. Lojeski,* 437 Pa. 448, 263 A.2d 889 (1970),

been called the "substantial factor" test for determining causation, although the Restatement makes no distinction between factual and legal cause and simply refers to the issue as one of legal cause. In §431 the components of legal cause are identified so as to distinguish the substantial factor requirement from the issue of legal policy. Negligent conduct is considered to be a legal cause of harm, according to that section, when two conditions are present: the conduct is a substantial factor in bringing about the harm, and there is an absence of a rule of law relieving an actor of liability. The requirement that the negligent action be a substantial factor is further refined by §432(1). "[T]he actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent."[9] The application of this section can eliminate the question of a defendant's liability at the outset on the grounds that the conduct was not a substantial factor, and therefore not a true cause, in producing the injury.

In electing to follow the Restatement rule instead of the former Pennsylvania rule, the Supreme Court explained the superior breadth of the section. "[I]t speaks . . . to [defendant's] 'negligent conduct,' which denotes the physical act or omission involved as well as the legal

---

the Supreme Court adopts the rule formulated in the Restatement (Second) of Torts §432 (1) (1965) as a statement of the law preferable to Pennsylvania's prior "but-for" or "*sine qua non*" test, as it had been stated in *Burrell Township v. Uncapher*, 117 Pa. 353, 11 A. 619 (1887). In the same case, §431 (a) of the Restatement, which states the requisites of legal cause, is cited with approval.

9. An exception to this rule is stated in Restatement (Second) of Torts §432 (2) (1965), which concerns the problem of concurrently operating forces, one of which was negligently set in motion by the defendant. In such cases, if both forces would be sufficient alone to cause the damage, the defendant's conduct will be seen as a substantial factor in producing the harm.

concept of negligence; it relates this negligent conduct to the element of substantiality in bringing about the result, which is a requisite of legal cause as stated in §431(a); and it says that substantiality is not present if the harm would have been sustained irrespective of the negligent conduct." *Whitner v. Lojeski,* supra, at 456-57, 263 A.2d at 893-94. What the Restatement actually accomplishes, then, is to bring together under the substantial factor element two features of the defendant's contribution to the plaintiff's harm: the conduct itself and that quality of the conduct which makes it negligent. If both features do not coincide in active operation to produce the plaintiff's injury, the negligent conduct is not a substantial factor producing harm and there can be no liability.

Keeping in mind that the Restatement rule was adopted in Pennsylvania for the purpose of elucidating the concept of substantiality in causation, it is apparent that the conduct of the appellant in the present case does not even meet this threshold requirement. The conduct of the General Telephone Company which plaintiff-appellee claims is negligent is the location of its telephone booth at the bottom of a hill, close to a sidewalk on the outside of the second turn in an S-curving roadway. Testimony from the plaintiff's expert was introduced in an effort to support the appellee's theory that the booth was located in unreasonable disregard for the safety of its occupants due to the combination of the hill and the double curve.[10] The testimony revealed, however, that the

10.  I am unable to agree that the record provides support for the idea that the telephone booth was endangered by the railroad track. The plaintiff's own expert, a traffic engineer, stated and restated his opinion that the location of the booth was unsafe due to the curving, downhill road and the possibility that a car would deviate from the road somewhere in that area and cause damage to anything situated on the outside of the curve. He stated that he had considered the railroad crossing in making this analysis, but the only testimony he gave concerning the tracks was that the

plaintiff's severe injuries were sustained when a car operated carelessly, or even recklessly, by an unlicensed man who had been drinking, pursued by a police vehicle, with the accelerator stuck to the floor and without brakes, sped at a high rate of speed into a train and was catapulted into the air on a course which took it through the appellant's booth, with its innocent occupant, and beyond. The situation of the booth in the destructive path of Mr. Knavel's machine was undeniably one of the infinitude of events and conditions which led to Mr. Noon's tragic injuries. However, that feature of its location which allegedly made the conduct of the appellant in so placing it negligent, i.e., the hill and the S-curve, was not shown by the plaintiff to have played any part in the accident. Rather it seems apparent that the same accident, with the same injurious results, would have occurred if the Knavel vehicle had bounced off a train at speeds in excess of 70 m.p.h. into the phone booth occupied by Mr. Noon, whether or not the road from which it departed was downhill and curving. To suppose that the hill and the curve were instrumental in causing the speed or direction of the car under the circumstances revealed in the record, or that they in some manner were responsible for the collision with the train or the angle the flying car took to obliterate the telephone booth, would be impermissible speculation. See Barber v. John C. Kohler Co.,

---

danger of accident was the same regardless of the booth's position in respect to the tracks. Other witnesses, employees of the railroad responsible for the safe running of the trains, stated that the booth and the train presented no hazard to each other.

An effort has been made to support the jury's finding of causation by reference to the jury view of the accident scene and the photographs submitted in evidence. Ordinarily, a view cannot be considered evidence of intangible concepts, such as the cause of damage. See A. Jenkins, Jr., Pennsylvania Trial Evidence Handbook §5.10 (1974). A review of the photographs also fails to support the conclusion that the phone booth was dangerously located with respect to the railroad.

428 Pa. 219, 237 A.2d 224 (1968) ; *Noel v. Puckett,* supra; *Watkins v. Sharon Aerie No. 327 Fraternal Order of Eagles,* 423 Pa. 396, 223 A.2d 742 (1966) ; *Cuthbert v. Philadelphia,* supra.

Moreover, the appellant herein could be properly held liable "only with respect to those harms which proceeded from a risk or hazard the foreseeability of which rendered its conduct negligent." *Metts v. Griglak,* 438 Pa. 392, 396, 264 A.2d 684, 687 (1970).[11] Even assuming, for the sake of argument, that the placement of appellant's booth at its particular location on this specific road was negligent, the risk created thereby was that a driver might lose control of his vehicle and be unable to avoid striking the booth. The record reveals the efforts of the plaintiff to raise the inference that the occurrence of such an accident at this point was so probable that failure to anticipate it, and take precautions against it, is proof of negligence. As it happened in the present case, however, this potential hazard did not develop into injury. The driver did not lose control of his car due to the curves in the road; the vehicle was already out of control when it entered the dangerous stretch of highway. His conduct in closing his eyes, the unpredictable happenstance of his collision with the engine of a train, and the chance that the vehicle would be deflected into the area occupied by

---

11. In *Metts v. Griglak,* 438 Pa. 392, 264 A.2d 684 (1970) grant of a judgment n.o.v. was affirmed in favor of defendant bus lines where a bus was operated at excessive speeds in snowy slushy conditions. The snow swirl allegedly created by the bus obscured the vision of a driver who had a collision after the bus had passed. It was held that such a collision was not a harm within the risk foreseeably created by a speeding bus, and furthermore the fact that the driver, blinded by snow, continued driving was so extraordinary as to be unforeseeable. Similarly, in the present case, the foreseeable risk arguably created by the location of the booth, like the risk of the speeding bus, never materialized, and the accident that did occur was so extraordinarily improbable as to be beyond any risk created.

the booth can hardly be said to be either reasonably foreseeable by the appellant or a normal consequence of placing a public telephone along a busy road. *Stanik v. Steuber,* 439 Pa. 327, 266 A.2d 703 (1970).[12] Rather than a reasonable probability to be anticipated as a natural result of the conduct here complained of, such an occurrence could be imagined as only a remote and extraordinary possibility.[13] *See Brusis v. Henkels,* 376 Pa. 226, 102 A.2d 146 (1954); *Dahlstrom v. Shrum,* 368 Pa. 423, 84 A.2d 289 (1951); *Guca v. Pittsburgh Rys. Co.,* 367 Pa. 579, 80 A.2d 779 (1951); *Hoag v. Lake Shore & Michigan S.R.R. Co.,* 85 Pa. 293 (1877); *Becker v. Borough of Schuylkill Haven,* 200 Pa. Superior Ct. 305, 189 A.2d 764, *allocatur refused,* 200 Pa. Superior Ct. *xxx* (1963); *Farley v. Sley*

---

12. The statement of Mr. Justice POMEROY in *Stanik v. Steuber,* 439 Pa. 327, 333, 266 A.2d 703, 706 (1970), would seem to apply equally in the present case: "The almost incredible stupidity and recklessness of these intervening acts of the . . . driver would serve to insulate [the appellant], if insulation were needed, from any liability for their consequences."

13. For the Restatement discussion of foreseeability as it relates to the present case, see Restatement (Second) of Torts, §435(2) (1965), which reads as follows: "The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." Comment *c* to that section states in part: "the highly extraordinary nature of the result which has followed from the actor's conduct (with or without the aid of an intervening force) indicates that the hazard which brought about or assisted in bringing about that result was not among the hazards with respect to which the conduct was negligent." *See also* §430, comment *c*, which states in part: "Harm may be sustained as a consequence of conduct which is negligent only because, and in so far as it subjects another to some particular hazard. But the harm may result in some other manner than through the other's exposure to this hazard. If so, there can be no liability even though in all other respects the manner in which the harm is brought about is such as would make the actor liable."

*System Garages, Inc.,* 187 Pa. Superior Ct. 243, 144 A.2d 600 (1958).

Appellants have moved for a judgment n.o.v. on the grounds that plaintiff-appellee failed to prove the requisite causal connection between appellant's negligent conduct and appellee's injuries. In considering a motion for judgment n.o.v. the evidence and all reasonable inferences arising therefrom must be viewed in a light most favorable to the verdict winner. *Flickinger Estate v. Ritsky,* supra; *Kresovich v. Fitzsimmons,* 439 Pa. 10, 264 A.2d 585 (1970); *Zilka v. Sanctis Constr., Inc.,* supra. Whereas ordinarily questions of causation are resolved by the jury, *see Bleman v. Gold,* 431 Pa. 348, 246 A.2d 376 (1968), it is the duty of the trial judge to determine in the first instance whether the requisites of causation can be met by the plaintiff's evidence or whether it is to be allowed to remain in the hands of a jury. *Cuthbert v. Philadelphia,* supra. In reviewing the denial of appellant's motion, this Court must also keep in mind "[t]he fundamental principle underlying the right of withdrawal of cases from the jury is that a case may be withdrawn only in clear cases in which as a matter of law the jury would not be legally justified in arriving at a verdict in favor of the party against whom the withdrawal is made." 6 Standard Pennsylvania Practice 259 (1960). The verdict winner is not entitled to the benefit of those inferences which amount merely to guess or conjecture. *Kresovich v. Fitzsimmons,* supra.

In the present case it was plaintiff-appellee's burden to prove by a preponderance of the evidence that the appellant's negligent placement of its phone booth was a legal cause of the harm sustained. It is my opinion that this burden was not met. To sustain the jury's verdict against the appellant would permit a result to stand which had been reached through mere speculation.

This is a difficult case. Any person aware of Mr. Noon's tragic injuries would hope that he obtain a large

financial recovery as some slight recompense for his undeserved suffering. Nevertheless, meaningful appellate review demands a dispassionate consideration of the facts as they are presented on the record. Reading into the record facts which are not there, or distorting ones that are, does not serve the ends of justice, nor does abandoning to the jury the obligation of reaching the result as it is dictated by the facts, in order to avoid an unpleasant responsibility. It is the duty of this Court to give innocent victims a right of recovery against those who caused them harm. But it also is imperative to see that innocent defendants are not charged with liability for damage brought about through no fault of their own. In this case it is not disputed that defendant Knavel caused serious harm to the plaintiff. The argument that appellant is to be held liable for this damage is founded on a causal link so insubstantial as to render any connection between the appellant's conduct and the plaintiff's injury pure illusion. It is clear that the conduct of appellant which the plaintiff appellee seeks to identify as a legal cause of his injuries is no more than a fortuitous circumstance of the accident.

The judgment for Robert Noon against the appellant General Telephone Company of Pennsylvania should be reversed, and judgment granted n.o.v. for the appellant.

WATKINS, P. J., and VAN DER VOORT, J., join in this dissenting opinion.